Maria de los Ángeles Sánchez, demandante y recurrente, *v.* Autoridad de Energía Eléctrica et al., demandada y recurrida.

*Número:* RE-93-267     *Resuelto:* 9 de abril de 1997

*Juan G. Nieves Cassas* y *Edwin Prado,* abogados de la recurrente; *Lilliam Elisa Mendoza Toro,* abogada de la recurrida Autoridad de Energía Eléctrica; *Carlos Lugo Fiol, Procurador General Interino, Reina Colón de Rodríguez, Subprocuradora General Interina,* y *Edgardo Rodríguez Quilichini, Procurador General Auxiliar,* abogados del Estado Libre Asociado de Puerto Rico, recurrido.

## SENTENCIA

Examinados los señalamientos de error y alegatos de las partes, *se expide el auto de revisión y se dicta sentencia que deje sin efecto el dictamen recurrido. Se devuelve el caso al foro de instancia para procedimientos ulteriores, incluso para la vista evidenciaria correspondiente.*

Así lo pronunció y manda el Tribunal y certifica el señor Secretario del Tribunal Supremo. El Juez Asociado Señor Negrón García emitió una opinión concurrente, a la cual se unió el Juez Asociado Señor Fuster Berlingeri. Los Jueces Asociados Señor Rebollo López y Señora Naveira de Rodón emitieron sendas opiniones concurrentes. El Juez Asociado Señor Hernández Denton emitió una opinión disidente, a la cual se unieron el Juez Presidente Señor Andréu García y el Juez Asociado Señor Corrada Del Río.

(*Fdo.*) Francisco R. Agrait Lladó
*Secretario del Tribunal Supremo*

— O —

Opinión concurrente del Juez Asociado Señor Negrón García, a la cual se une el Juez Asociado Señor Fuster Berlingeri.

*La política pública de erradicar el hostigamiento sexual del lugar de trabajo impone al patrono un deber afirmativo continuo que perdura hasta que el empleado cesa de trabajar. Delgado Zayas v. Hosp. Int. Med. Avanzada,* 137 D.P.R. 643 (1994).

Bajo este deber patronal legal, no está prescrita la demanda de la Srta. María de los Ángeles Sánchez contra la Autoridad de Energía Eléctrica (Autoridad). Dicha demanda se refiere al ambiente hostil, creado por la conducta del Sr. Omar Santiago, Oficial de la División de Suministros, que no cesó el *2 de julio de 1990* con la decisión de renunciar de la señorita Sánchez, sino que persistió hasta el último día de su trabajo, el *20 de julio de 1990.*

I

La conducta de acoso sexual, aquí relacionada, se extendió por aproximadamente dos (2) años.[1] Incluyó llamadas

---

[1] Luego de que la Srta. María de los Ángeles Sánchez comenzó a trabajar en la Autoridad de Energía Eléctrica (Autoridad) en mayo de 1988, el Sr. Omar Santiago la llamó a través de los teléfonos interagenciales y *le dijo que era bella, que le hacía falta un hombre como él y que quería invitarla a cenar*; ella se negó y colgó el teléfono. Posteriormente, el Sr. Rigoberto Ríos, compañero de trabajo, la llamó por teléfono para comunicarle que *el tiburón* —aludiendo al *señor Santiago*— *iba tras su presa.* Ella le contestó que no le interesaba la visita, que le ofendía la llamada y que presentaría una querella.

Un viernes, al salir del trabajo y mientras ella hacía una llamada desde un teléfono público frente al edificio de la Autoridad, el señor Santiago *se paró muy cerca de su espalda y le pidió hablar a solas con ella.* Ella lo ignoró; luego entonces, mientras esperaba que su hermana la recogiera, el señor Santiago *le gritó que si se atrevía a presentarle una querella, él le haría daño.*

Otro día, mientras la señorita Sánchez entraba a sus oficinas acompañada de una amiga, el señor Santiago le *gritó, en presencia de varios compañeros, que ambas eran "cachapas".* Posteriormente, al ella salir un viernes del trabajo, junto a su novio, el señor Santiago, quien se encontraba en un "cafetín" cerca de la Autoridad, *co-*

telefónicas, piropos, invitaciones a cenar, confrontaciones físicas, humillaciones en público, amenazas y envío de flores.

La señorita Sánchez presentó una querella en la Comisión de Igualdad de Oportunidades en el Empleo (*Equal Employment Opportunity Commission*). En julio de 1989 Camille Galanes, adscrita a dicho organismo, trató de persuadirla de que desistiera. Además, le comunicó que la situación planteada podía deberse más a una percepción equivocada que a una realidad y que, en última instancia, le correspondía a ella detener la conducta del señor Santiago llamándolo personalmente.

El *2 de julio de 1990* la señorita Sánchez presentó su renuncia a la Autoridad, efectiva el *20 de julio*.(²) El *22 de julio de 1991* presentó una demanda contra la Autoridad por alegada violación a la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 746 *et seq.*, conocida como la Ley de Derechos Civiles de Puerto Rico, el Título VII de la Ley Federal de Derechos Civiles, y los Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142, respectivamente.

La Autoridad solicitó su desestimación. Adujo que las causas de acción bajo la Ley Núm. 100, *supra*, y los Arts. 1802 y 1803 del Código Civil, *supra*, estaban prescritas, pues el año de prescripción había comenzado el 2 de julio de 1990, cuando la señorita Sánchez advino en conocimiento del daño.(³)

---

menzó a pitarle e indicarle con señas a la señorita Sánchez que se le acercara. Su acompañante se dirigió al señor Santiago y le cuestionó su comportamiento, lo que ocasionó una confrontación física entre ambos.

Después de que la señorita Sánchez presentara varias querellas, las llamadas telefónicas, los silbidos y el envío de flores continuaron. Incluso, su automóvil fue rayado.

(²) La Autoridad presentó como *exhibit* la carta de renuncia de la señorita Sánchez, en la cual ella alega que "[l]a agencia se ha cruzado de brazos ante esta situación dando sanción y pábulo a la idea de este señor de que puede continuar su patrón de conducta con una total cobija e inmunidad". (Énfasis suplido.)

(³) En cuanto al Título VII de la Ley Federal de Derechos Civiles, alegó que no se satisfizo el requisito jurisdiccional de presentar una querella ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos de Puerto Rico o ante una agencia bajo el *Equal Employment Opportunity Commission.*

Subsiguientemente, la Autoridad presentó una Moción de Desestimación bajo la Doctrina de *Res Judicata*. Alegó que el Tribunal de Distrito Federal para el Distrito de Puerto Rico, en *Sánchez v. Alvarado, et al.*, Caso Civil Núm. 91-1889(GG), desestimó por prescripción en su totalidad una demanda por los mismos hechos del caso de epígrafe.[4]

Adelantamos que de esa determinación la señorita Sánchez apeló al Tribunal Federal de Apelaciones para el Primer Circuito. Al revocar, dicho foro concluyó,[5] *primero*, que después del 2 de julio de 1990, tanto el supervisor de la señorita Sánchez como el Director de Recursos Humanos de la Autoridad le aseguraron a ella que la investigación de su querella se estaba tramitando. Además, el 18 de julio de ese año la señorita Sánchez se reunió con oficiales del *Equal Employment Opportunity Commission* en un último intento para que la Autoridad resolviera la situación. Esto demuestra que *no es hasta después del 18 de julio que la señorita Sánchez estuvo segura de que la Autoridad no tomaría acción en cuanto a su querella.* *Segundo*, su carta de renuncia no era final. Aunque la notificó el 2 de julio, se reservó dieciocho (18) días para hacerla efectiva. Ese período indica que si la Autoridad corregía la conducta de hostigamiento y el ambiente hostil creado, ella hubiera tenido la oportunidad de retractarse en su decisión de renunciar. Por ende, *no es hasta su último día de trabajo —20 de julio de 1990— que se configura su despido constructivo.*

El tribunal de instancia, Hon. María M. Pérez de Chaar, mediante Sentencia de 30 de abril de 1993, desestimó la

---

[4] La señorita Sánchez presentó la demanda en el Tribunal de Distrito Federal para el Distrito de Puerto Rico el 17 de julio de 1991 bajo el Título VII de la Ley de Derechos Civiles federal, bajo 42 U.S.C. sec. 1983 y el Art. 1802 de nuestro Código Civil, 31 L.P.R.A. sec. 5141.

[5] Sentencia no publicada de 7 de mayo de 1993, *Angeles-Sanchez v. Alvarado*, 993 F.2d 1530 (1er Cir. 1993).

demanda en su totalidad. La señorita Sánchez acudió ante nos.([6])

## II

El hostigamiento sexual es una práctica ilegal e indeseable que atenta contra la dignidad del ser humano. Informe sobre el Discrimen por Razón de Género en los Tribunales de Puerto Rico, Comisión Jurídica Especial para Investigar el Discrimen por Género en los Tribunales de Puerto Rico, Tribunal Supremo, 1995, pág. 468. Tal hostigamiento puede expresarse de diversas formas: (1) manifestaciones simples como *piropos,* guiñadas e *insinuaciones sexuales indeseables;* (2) expresiones de agresión sexual más directas y más violentas, como *frases de cariño no invitadas,* pellizcos, roces corporales no solicitados, *invitaciones insistentes a salidas que no se desean,* besos, abrazos y apretones forzados, y (3) casos extremos de violencia física y psíquica, lo que incluye la violación sexual.([7])

De esta conducta hemos reconocido dos (2) modalidades: hostigamiento sexual por ambiente hostil y el llamado "hostigamiento equivalente" (*quid pro quo*). "En la primera vertiente, el hostigamiento sexual se produce cuando la conducta sexual para con un individuo tiene el efecto de interferir irrazonablemente con el desempeño de su trabajo o de crear en el mismo un ambiente intimidante, hostil u ofensivo." (Énfasis suplido.) *Rodríguez Meléndez v. Sup.*

---

([6]) Alega:

"Erró el Honorable Tribunal Superior de Puerto Rico, Sala de San Juan, al desestimar la Demanda presentada por los aquí peticionarios ya que la acción administrativa interrumpió el término prescriptivo y en la alternativa el cómputo del término prescriptivo debe comenzar desde el 20 de julio de 1990. Además, erró el tribunal de instancia al no tratar la Moción de Desestimación de los recurridos como una Moción de Sentencia Sumaria a tenor con las disposiciones de la Regla 10.2 de las de Procedimiento Civil de Puerto Rico de 1979."

([7]) Dras. M. Muñoz Vázquez y R. Silva Bonilla, *El hostigamiento sexual: sus manifestaciones y características en la sociedad, en los centros de empleo y los centros de estudios,* Centro de Investigaciones Sociales, Facultad de Ciencias Sociales, U.P.R., 1985, pág. 3.

*Amigo, Inc.*, 126 D.P.R. 117, 131–132 (1990). "[P]uede afectar el funcionamiento y la efectividad de la víctima en el empleo, *desalentar al empleado a permanecer en el empleo y dificultarle el progreso en su carrera* ." *Delgado Zayas v. Hosp. Int. Med. Avanzada*, supra, pág. 654. Véase, además, B.S. Roberts y R.A. Mann, *Sexual Harassment in the Workplace: A Primer*, 29 Akron L. Rev. 269, 276 (1996).

*Ambiente* se refiere a las condiciones o circunstancias de un lugar, favorables o no, para las personas que en él están. *Diccionario de la Lengua Española*, 20ma ed., Madrid, Ed. Espasa-Calpe, 1984, T. I. *Se colige que el ambiente es algo continuo, creado por las condiciones o circunstancias de un lugar. En consecuencia, el ambiente hostil perdura durante el tiempo que estén presentes las condiciones que lo causan.*[8]

Recalcamos que el hostigamiento sexual constituye una modalidad del discrimen por razón de sexo, proscrito por la Ley Núm. 100, *supra. Delgado Zayas v. Hosp. Int. Med. Avanzada*, supra; *Rodríguez Meléndez v. Supermercado Amigo, Inc.*, supra. No obstante, el 22 de abril de 1988 la Asamblea Legislativa aprobó la Ley Núm. 17 (29 L.P.R.A. sec. 155 *et seq.*) para "prohibir el hostigamiento sexual en el empleo, imponer responsabilidades y fijar penalidades". 29 L.P.R.A. sec. 155. A su amparo, el "patrono será responsable por los actos de hostigamiento sexual entre empleados en el lugar de trabajo si el patrono o sus agentes o sus supervisores *sabían o debían estar enterados de dicha conducta*, a menos que el patrono pruebe que tomó una acción *inmediata y apropiada* para corregir la situación". (Énfasis suplido.) 29 L.P.R.A. sec. 155e. "Corresponde a cada patrono, a la luz de sus circunstancias particulares, tomar las medidas cautelares que sean necesarias para evitar con efectividad el hostigamiento sexual en sus talleres de

---

[8] Entre las causas que crean un ambiente hostil se encuentran: (1) conducta de hostigamiento sexual; (2) omisión del patrono de prevenir, desalentar y evitar dicha conducta, y (3) omisión del patrono de atender adecuadamente la querella de un empleado.

trabajo." *Delgado Zayas v. Hosp. Int. Med. Avanzada*, supra, pág. 658.

*La obligación patronal de mantener un ambiente de trabajo libre de actos de hostigamiento sexual es continua.* Prosigue, en cuanto de cada empleado en particular, hasta su último día de trabajo. Ese deber del patrono no se limita a corregir situaciones pasadas de hostigamiento sexual, sino a prevenir que ocurran en el futuro. Roberts y Mann, *supra*, pág. 284. No se libra de esta obligación el patrono porque no se le haya informado actos de hostigamiento. Perdura mientras su taller de trabajo opere.

## III

Tomando como ciertas, en esta etapa, las alegaciones de la demanda,[9] surge que la conducta del señor Santiago creó un ambiente hostil de trabajo para la señorita Sánchez. *Ese ambiente de constante humillación la obligó a renunciar.*[10] Aunque la renuncia equivale a un despido constructivo, no se configuró el día en que ella notificó su renuncia —*2 de julio de 1990*— sino su último día de trabajo —*20 de julio de* 1990— pues hasta ese momento la Autoridad pudo haber cumplido con su deber patronal y brindarle a la señorita Sánchez la oportunidad de permanecer en su empleo.

---

[9] Este recurso llega ante nos luego de que el foro de instancia accediera a una moción de desestimación de la Autoridad. Sabido es que para disponer de una moción de desestimación tienen que tomarse como ciertas y buenas todas las alegaciones fácticas de la demanda presentada. *Pressure Vessels P.R. v. Empire Gas P.R.*, 137 D.P.R. 497 (1994), y casos allí citados.

Surge del expediente que la Autoridad sometió varios documentos junto con su Moción de Desestimación. Además, en su Sentencia el tribunal a quo hizo determinaciones de hecho y conclusiones de derecho. Por ello, es posible que el tribunal de instancia considerara dicha moción como de sentencia sumaria, conforme a la Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

Bajo este supuesto, no procedía declararla con lugar, pues existía controversia sustancial sobre diversas cuestiones de hecho.

[10] Debemos destacar que, contrario a la mejor política de *investigar toda querella de hostigamiento sexual* que sea presentada, se trató de persuadir a la señorita Sánchez de retirar su querella. B.S. Roberts y R.A. Mann, *Sexual Harrasment in the Workplace: A Primer*, 29 Akron L. Rev. 269, 286 (1996).

Tanto el ambiente hostil como la obligación de la Autoridad de mantener un ambiente de trabajo libre de conducta posiblemente constitutiva de hostigamiento sexual subsistieron hasta el *20 de julio de 1990*, día en que comenzó el término prescriptivo de un año.[11] La demanda se presentó el lunes *22 de julio de 1991*, último día hábil. No procedía su desestimación.

Procede revocar y devolver el caso al tribunal de instancia para la continuación de los procedimientos.

— O —

Opinión concurrente emitida por el Juez Asociado Señor Rebollo López.

Este Tribunal, al establecer normas que regirán en nuestro ordenamiento jurídico, *no* puede establecer las mismas en el vacío. Esto es, este Foro al así actuar *necesariamente tiene que tomar en cuenta los hechos particulares y específicos del caso en ese momento ante su consideración y si éstos son suficientes para emitir una decisión a favor de una de las partes, cualquiera que ésta sea.*

La determinación a la que llegan varios de los integrantes del Tribunal, a los efectos de que la demanda radicada a nivel de instancia por la recurrente María de los Ángeles Sánchez está prescrita, como la que propulsan otros, de que dicha demanda así no lo está, *son, ambas, improcedentes en derecho.* Ello debido a que *no* cuenta este Tribunal en el presente caso —resuelto a nivel de instancia a base de

---

[11] No cabe invocar *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988), para sostener que el término de prescripción comienza al momento de la notificación de la renuncia. En dicho caso el patrono despidió al empleado. Resolvimos que el término comenzó el día en que se notificó el despido, no el día de su efectividad, pues desde ese momento conocía del daño.

En el caso de autos, la empleada se ve obligada a renunciar por la existencia de un ambiente hostil. A diferencia del caso de un despido, aquí no se conoce con certeza que el patrono no cumplirá con su deber estatutario hasta el día en que la renuncia fuese efectiva. Más aún, el ambiente hostil continuó hasta el último día de trabajo. No aplica lo resuelto en *Delgado Rodríguez v. Nazario de Ferrer*, supra.

una moción de desestimación— con hechos suficientes para hacer la referida determinación.

A nuestro juicio, lo procedente en derecho es la revocación de la sentencia recurrida y la devolución del caso al tribunal de instancia para que dicho foro reciba *prueba específica* respecto a un hecho fundamental a la controversia antes mencionada; hecho sobre el cual *no* contamos con evidencia alguna en estos momentos.

I

La demandante María de los Ángeles Sánchez y otros, radicaron ante el antiguo Tribunal Superior de Puerto Rico, Sala de San Juan, una demanda contra la Autoridad de Energía Eléctrica y otros (Autoridad), reclamando una fuerte suma de dinero por concepto de salarios dejados de percibir y daños y perjuicios. Se alegó, en síntesis y en lo pertinente, que la referida demandante trabajó para la Autoridad desde el mes de septiembre de 1988 al mes de julio de 1990; viéndose ésta obligada a renunciar con motivo de unos actos de hostigamiento sexual de parte de un compañero empleado —los cuales enumeró— que crearon "un ambiente hostil de trabajo", conducta en relación con la cual la Autoridad alegadamente se "cruzó de brazos" a pesar de sus continuas querellas al respecto.

La Autoridad radicó una moción de desestimación. Predicó la desestimación solicitada, de manera principal, en que la causa de acción ejercitada por la demandante estaba prescrita. Alegó, en síntesis y en lo pertinente, que conforme a la demanda radicada, los actos de hostigamiento sexual habían ocurrido con anterioridad al día 2 de julio de 1990, fecha en que la demandante le notificó por carta a la Autoridad que renunciaba a su cargo —efectivo el 20 de julio de 1990— debido al hostigamiento del cual fue objeto y a la actitud de la Autoridad al ignorar sus quejas. Razonó la Autoridad que, constituyendo el 2 de julio de 1990 el día

en que comenzó a contar el período prescriptivo de un año, la demanda radicada el 22 de julio de 1991 estaba prescrita.

El tribunal de instancia, luego de la celebración de una vista oral, acogió el planteamiento de la Autoridad. En consecuencia, dictó sentencia desestimando la demanda por razón de prescripción. Inconforme, acudió la parte demandante ante este Tribunal en revisión de la referida sentencia desestimatoria. En el recurso que a esos efectos radicara le imputó al foro de instancia haber errado

... al desestimar la Demanda presentada por los aquí peticionarios ya que la acción administrativa interrumpió el término prescriptivo y en la alternativa el cómputo del término prescriptivo debe comenzar desde el 20 de julio de 1990. Además, erró el tribunal de instancia al no tratar la Moción de Desestimación de los recurridos como una Moción de Sentencia Sumaria a tenor con las disposiciones de la Regla 10.2 de las de Procedimiento Civil de Puerto Rico de 1979.

Acordamos revisar. En el día de hoy varios de los integrantes del Tribunal resuelven que procede confirmar la sentencia recurrida; esto es, entienden que la acción radicada por María de los Ángeles Sánchez fue radicada fuera del término de un año que regula esta clase de acción, por cuanto dicho término comenzó a decursar a partir del 2 de julio de 1990, fecha en que la demandante le notificó a la Autoridad su decisión de renunciar al cargo que ocupaba. Por otro lado, otros Jueces de este Tribunal entienden que dicha demanda no está prescrita por razón de que el término prescriptivo debe comenzar a contarse desde la fecha en que fue efectiva la renuncia presentada por la demandante, esto es, el 20 de julio de 1990.[1]

*Diferimos de ambas posiciones*; veamos por qué.

---

[1] Bajo esta teoría, el término para radicar la demanda se entenderá extendido hasta el día 22 de julio de 1991; ello por razón de que el 20 de julio cayó sábado.

## II

Como es sabido, el Art. 3 de la Ley Núm. 17 de 22 de abril de 1988(²) (29 L.P.R.A. sec. 155b), establece:

*Sec. 155b. Hostigamiento sexual en el empleo—Fundamentos; circunstancias*

El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:

(a) Cuando el someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.

(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.

(c) *Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo.* (Énfasis suplido.)

Como podemos notar, los incisos (a) y (b) del transcrito artículo de ley "se refieren al tipo de hostigamiento equivalente quid pro quo (algo a cambio de algo). *Delgado Zayas v. Hosp. Int. Med. Avanzada*, 137 D.P.R. 643 (1994); esto es, situaciones en las cuales el hostigador exige el sometimiento como condición del empleo o para la concesión o no de beneficios al empleado subordinado.

A nuestro juicio, el inciso (c) del transcrito Art. 3 contempla *dos* (2) situaciones distintas, a saber: la primera, cuando la conducta hostigante tiene el propósito o efecto de interferir, de manera irrazonable, con el desempeño del trabajo de la persona hostigada, y la segunda, cuando dicha conducta crea un ambiente de trabajo intimidante, hostil u ofensivo.

En nuestra opinión, en la *primera* de las modalidades *no* necesariamente tiene que tratarse de varios incidentes

---

(²) Estatuto conocido como la Ley de Hostigamiento Sexual en el Empleo.

de hostigamiento, *como tampoco* dicha conducta tiene que ser obligatoriamente por un período de tiempo prolongado. En otras palabras, bajo esta modalidad puede tratarse de uno, dos o varios incidentes que, incluso, pueden ser aislados. Sólo se requiere que se trate de un acto de hostigamiento sexual, conforme lo define la ley, y que dicho acto interfiera, de manera irrazonable, con el desempeño del trabajo de la persona hostigada.

Bajo la *segunda* de las modalidades que establece el citado inciso (c), a nuestro entender el legislador contempló la posibilidad de repetidos actos de hostigamiento —que aún, por sí solos, podrían no interferir, de manera irrazonable, con el desempeño del trabajo— por un determinado período de tiempo que, sin embargo, llegan a crear un "ambiente de trabajo intimidante, hostil u ofensivo" (29 L.P.R.A. sec. 155b(c)) en el trabajo para la persona hostigada. Esto es, dicha modalidad lo que realmente contempla, o se refiere, es a un patrón de conducta.

En la demanda que se radicara en el presente caso, la parte demandante enumeró varios actos específicos de hostigamiento sexual, por parte de un compañero empleado, durante un período aproximado de dos (2) años. Alegó, además, en la demanda que radicara, que dichos actos tuvieron como consecuencia la creación de "un ambiente hostil de trabajo ...". Esto es, se puede entender que la parte demandante en efecto hizo alegaciones al amparo de las dos modalidades que contempla el referido inciso (c) del citado Art. 3 de la Ley de Hostigamiento Sexual en el Empleo, *supra*, situación que entendemos permisible en derecho.

De manera, pues, que si tomamos los actos de hostigamiento sexual alegados en la demanda como "actos individuales" de hostigamiento bajo la primera modalidad contemplada por el referido inciso (c) —esto es, como actos que tuvieron el efecto de interferir, de manera irrazonable, con el desempeño del trabajo de la demandante— la demanda ciertamente estaría prescrita. Ello por la sencilla razón de que todos dichos actos ocurrieron *con anterioridad* al día 2

de julio de 1990, fecha de la carta de renuncia, y la demanda fue radicada el 22 de julio de 1991.

Si a ello le sumamos, o añadimos, que la demandante Sánchez, al 2 de julio de 1990, estaba consciente, o sabía, que había sufrido un daño, o en sus propias palabras, había sufrido unas "heridas" que necesitaban "sanar",(3) tenemos que la fecha de partida del período prescriptivo de un año comenzó a decursar ese día 2 de julio de 1990.

Ello así, ya que bajo la teoría cognoscitiva del daño, que rige en nuestra jurisdicción en virtud de las disposiciones del Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298, el término prescriptivo de una causa de acción comienza a computarse desde el momento en que la víctima del daño tiene conocimiento del mismo y está en condiciones de ejercitar la correspondiente acción. *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988); *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984). En vista de los términos de la carta de renuncia que el día 2 de julio de 1990 suscribiera la demandante Sánchez, no hay duda de que ésta, a esa fecha, tenía "conocimiento" del "daño" que había sufrido y estaba en condiciones de ejercitar la causa de acción correspondiente.

---

(3) En la carta de renuncia que en dicha fecha suscribiera Sánchez, ésta expuso, en lo pertinente, que:

"En múltiples ocasiones me he querellado a la agencia en relación a la conducta de un compañero de trabajo de nombre Omar Santiago. El señor Santiago consistentemente ha sostenido un patrón de hostigamiento sexual, de persecución, de amenaza y de ofensas de toda índole. De todo esto la agencia tiene conocimiento en virtud de mis frecuentes quejas.

"*Esa conducta de este señor ha causado en m[í] malestar, desasosiego y quebrantamiento, de tal modo que me impide desempeñar mi labor estable y normalmente, al extremo de que he tenido que visitar a un psicólogo para evitar un derrumbe total de mi persona.*

"La agencia se ha cruzado de brazos ante esta situación dando sanción y pábulo a la idea de este señor de que puede continuar su patrón de conducta con una total cobija e inmunidad.

"*En virtud de lo antes relatado y en ánimo de sanar las heridas que esta situación me ha causado* [es] que me veo en la dolorosa posición de renunciar a un trabajo en que había puesto mi lealtad y empeño.

"Esta renuncia será efectiva el día 20 de julio de 1990. Agradezco la oportunidad brindada por esta División y por cada uno de mis compañeros de expandir mi conocimiento tanto profesional como personal." (Énfasis suplido.)

*Ahora bien*, la situación *podría* ser otra respecto a la alegación de creación de un "ambiente hostil en el empleo", situación, repetimos, contemplada bajo la segunda modalidad del mencionado inciso (c) del Art. 3 de la Ley Núm. 17. Bajo esta modalidad, la demanda radicada podría o no estar prescrita *dependiendo* de un *hecho fundamental* sobre el cual *no* existe evidencia alguna en estos momentos. *Nos referimos al hecho de si la demandante Sánchez, luego de presentar su carta de renuncia el día 2 de julio de 1990, continuó o no efectivamente laborando en las instalaciones de la Autoridad hasta el día 20 de julio de 1990, fecha en que fue efectiva su renuncia .*

A nuestro juicio, la demanda estaría prescrita si la demandante Sánchez, luego de presentar su renuncia el día 2 de julio, cesó en su trabajo, esto es, *no* asistió más al mismo. Ello así, ya que resulta obvio que ella realmente *no* podía haber estado sufriendo daños, como consecuencia del ambiente hostil que fue creado en el lugar de empleo, mientras estaba descansando en su casa. Dicho de otra manera, el ambiente hostil, para ella, cesó desde el día en que ella decidió renunciar y en efecto abandonó físicamente su lugar de trabajo. Concluir lo contrario es aferrarse a una ficción jurídica que resulta insostenible.[4]

La demanda radicada, por otro lado, *no* estaría prescrita a nuestro entender si la demandante Sánchez, no obstante haber renunciado el día 2 de julio, continuó efectivamente trabajando en la Autoridad hasta el 20 de julio de 1990.

---

[4] Aferrarse a dicha ficción jurídica —esto es, extender el período hasta la fecha de la efectividad de la renuncia, ello *independientemente* del hecho de que el empleado haya o no trabajado durante el referido período de tiempo— resulta ser insostenible y peligroso.

La misma pone en manos del empleado la facultad de extender, a su antojo y capricho, el período de daños. Ello así por cuanto el empleado en cuestión, dependiendo de cuántas vacaciones regulares, o por enfermedad, tenga acumuladas, puede, a su elección, fijar la fecha de la efectividad de la renuncia, esto es, hasta cuándo "subsistirá" el período de daños por el cual puede reclamar. Recuérdese que el empleado, si es que se resuelve que el "ambiente hostil" subsiste hasta la fecha de la efectividad de la renuncia, tendría derecho a reclamar por ese período adicional de tiempo.

Ello por razón de que, bajo esta alternativa, dicha demandante continuó siendo víctima, o sufriendo el impacto, del ambiente hostil que había sido creado en el lugar de su empleo como consecuencia de los actos de hostigamiento en que había incurrido su compañero de trabajo.

Sobre tal hecho, esto es, si la demandante Sánchez efectivamente trabajó o no durante el período comprendido entre el 2 y el 20 de julio de 1990 las partes *no* aportaron evidencia alguna ni el tribunal de instancia les requirió prueba de ello. En consecuencia, el justo y correcto proceder en el presente caso debe ser devolver el mismo al foro de instancia para que reciba esa sencilla prueba y, entonces, proceda a resolver el caso conforme lo antes expresado. Es por ello que diferimos tanto de los compañeros Jueces que, en estos momentos, opinan que la demanda está prescrita como de los que opinan lo contrario.

— O —

Opinión concurrente emitida por la Juez Asociada Señora Naveira de Rodón.

La correcta aplicación de la figura de la prescripción extintiva hace indispensable la adecuada consideración de las normas que rigen las acciones por hostigamiento sexual en el empleo, una reconocida vertiente del discrimen por razón de género, y de los elementos que generalmente caracterizan las situaciones que provocan la creación de un ambiente de trabajo hostil. También es preciso considerar la aplicación de la figura de la prescripción extintiva a las acciones por despido constructivo. Veamos los hechos pertinentes.([1])

---

([1]) Cabe señalar que en instancia nunca se celebró una vista evidenciaria. Las determinaciones de hecho que consignó el tribunal en su sentencia desestimatoria surgen de los documentos que presentaron las partes en relación con la moción de los demandados para que se desestimara la demanda por prescripción. Para fines de la procedencia de la moción de los demandados, habida cuenta de que en ella se presentaron los documentos y se alegaron hechos no contenidos en la demanda, eran de aplicación los criterios de la figura procesal de la sentencia sumaria, contenidos en la

I

La recurrente María de los Ángeles Sánchez comenzó a trabajar en mayo de 1988 en la Autoridad de Energía Eléctrica (en adelante Autoridad) como Analista de Computadoras. Laboraba en las oficinas de la Autoridad que están localizadas en la Avenida Ponce de León en Santurce. A partir de septiembre de 1988, el Sr. Omar Santiago, compañero de trabajo asignado a la División de Suministros, comenzó a realizar una serie de actos dirigidos a la recurrente. Santiago laboraba también en las oficinas localizadas en la Avenida Ponce de León. Según los hechos alegados en la demanda, la conducta de Santiago, que continuó durante un período de dos (2) años, causó que "el ambiente de trabajo de la demandante se contaminara con un abuso continuo, creando un ambiente hostil". Detallaremos los incidentes que experimentó Sánchez, por cuanto éstos son de trascendental importancia para caracterizar la causa de acción incoada y, por lo tanto, para determinar el punto de partida de su término prescriptivo.

En septiembre de 1988 Santiago llamó á Sánchez durante horas laborables. Le dijo que ella era "bella, que le hacía falta un hombre como él, y que quería invitarla a cenar", a lo que Sánchez se negó. Varios días después, otro compañero de Sánchez la llamó y le informó que Santiago iba de camino a visitarla; luego le dijo que "el tiburón iba tras su presa". Tiempo después, Sánchez salió de su trabajo y procedió a llamar a un familiar desde un teléfono público ubicado frente a las facilidades de la Autoridad para que viniera a recogerla. Al terminar la conversación, se percató que Santiago se hallaba a su lado. Éste le pidió hablar a solas, sin embargo, Sánchez trató de ignorarlo y cruzó la Avenida Ponce de León con la intención de esperar

---

Regla 36 de Procedimiento Civil, 32 L.P.R.A. Ap. III. No obstante lo anterior, habiéndose resuelto el presente caso en instancia bajo los parámetros de una moción de desestimación, y por ser de gran importancia para el adecuado análisis del presente recurso, expondremos los hechos que surgen de la demanda y que no fueron controvertidos por la parte demandada durante los procedimientos en instancia.

su familiar más cerca del edificio central de la Autoridad. Mientras ella caminaba, Santiago seguía hablándole. Cuando ella llegó al otro lado de la avenida, Santiago le gritó que si ella presentaba una querella en su contra, él le haría daño.

La conducta de Santiago hacia Sánchez continuó. En una ocasión, mientras Sánchez y una compañera de trabajo entraban al edificio de la Autoridad, Santiago les gritó "cachapas"; otras veces, éste le dejaba notas en su vehículo invitándola a un motel; le silbaba; ocasionó un altercado con el novio de Sánchez; además, le rayó el vehículo en dos (2) ocasiones y le enviaba flores a la oficina.

Por motivo de estos incidentes, Sánchez presentó tres (3) querellas ante la Oficina de Igualdad de Oportunidad en el Empleo de la Autoridad. En julio de 1989, después de la presentación de la segunda querella, una empleada de dicha oficina se comunicó con Sánchez para instarla a que desistiera de las querellas. Amada T. Nieves, entonces administradora de esa oficina, también trató de persuadir a Sánchez, señalándole que su reacción podía deberse más a una percepción que a una realidad y que, en todo caso, le correspondía a Sánchez detener a Santiago, llamándolo personalmente.

Con relación a la tercera querella, presentada por Sánchez el 3 de abril de 1990, la Autoridad le comunicó mediante carta de 6 de agosto de 1990, suscrita por Amada T. Nieves, lo siguiente:

> Posteriormente y relacionado a los hechos presentados en su última querella, [3 de abril de 1990], se le informa que se recomendará la formulación de cargos disciplinarios al Sr. Omar Santiago de acuerdo a la gravedad de estos nuevos hechos.

El proceso de formulación de cargos contra Santiago con relación a la última querella aparentemente continuó. En una carta de 10 de agosto de 1990, suscrita por José Olivencia Sepúlveda, Jefe de la Subdivisión de Relaciones Industriales de la Autoridad, se le informó a Sánchez que el

15 de junio de 1990 la Autoridad le había formulado cargos a Santiago. Posteriormente, el 30 de mayo de 1991, el Lcdo. Ramón Martínez Caballero, abogado de la Oficina de Procedimientos Especiales de la Subdivisión de Relaciones Industriales de la Autoridad, le comunicó que la vista administrativa para ventilar los cargos presentados contra Santiago estaba señalada para el 1ro de julio de 1991. No surge del expediente cuál fue el resultado de este proceso.

Alegando insatisfacción con la ejecutoria de la Autoridad en relación con sus querellas, ya el 2 de julio de 1990 Sánchez había notificado su renuncia, la cual sería efectiva el 20 de julio siguiente. Sin embargo, como ya hemos señalado, las gestiones ante la Autoridad a raíz de las querellas presentadas por Sánchez continuaron. Sánchez incluso acudió a una entrevista con la señora Nieves el 18 de julio de 1990, donde se discutió el caso y se le informó que la investigación y el procesamiento de los cargos contra Santiago continuaban. Como hemos señalado, la vista para ventilar los cargos alegadamente se llevó a cabo el 1ro de julio de 1991, casi un (1) año después de que Sánchez presentara su renuncia.

El 22 de julio de 1991, Sánchez y sus familiares presentaron una acción civil en el entonces Tribunal Superior de Puerto Rico, Sala de San Juan, contra la Autoridad, Omar Santiago y otros. La demanda invocaba la aplicación de los Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142; de la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*, que prohíbe el discrimen por razón de sexo, entre otras razones, y las Secs. 7, 8 y 16 del Art. II de la Constitución del Estado Libre Asociado de Puerto Rico, L.P.R.A., Tomo 1. En esencia, delineaba una acción por hostigamiento sexual mediante la creación de un ambiente hostil de trabajo, producto de la conducta de un compañero de trabajo. Esta causa de acción está expresamente detallada en la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155 *et*

*seq.*), la cual es de aplicación a los hechos del caso de autos.([2])

Oportunamente, los demandados, excepto Omar Santiago, solicitaron la desestimación de la demanda. Adujeron que las causas de acción por las que se reclamaba en la demanda estaban prescritas. Arguyeron que el término prescriptivo comenzó a contar desde el 2 de julio de 1990, dado que al menos desde esta fecha Sánchez tuvo conocimiento del daño y pudo ejercitar la acción.([3])

La parte demandante se opuso oportunamente a la moción de los demandados. Arguyó que las gestiones administrativas ante la Autoridad habían interrumpido el período prescriptivo. En la alternativa, planteó que el ambiente hostil por el cual se reclamaba en la demanda prevaleció hasta el 20 de julio de 1990, fecha en que Sánchez efectivamente cesó sus labores en la Autoridad, por lo que en todo caso el período prescriptivo debió haber comenzado en esa fecha.

El tribunal sentenciador acogió en su totalidad los planteamientos esgrimidos por los demandados y desestimó la demanda. Concluyó que el término prescriptivo de un (1) año para las acciones bajo el Código Civil y la Ley Núm. 100, *supra*, comenzó a decursar en 1988, fecha en que Sánchez tuvo conocimiento del daño alegado en la demanda por primera vez. También determinó que las gestiones de Sánchez ante la Autoridad no tuvieron efecto interruptor alguno sobre los términos prescriptivos de las acciones que luego presentaron en los tribunales. Citó lo resuelto por

---

([2]) Recordemos que "[c]ualquier defecto en la denominación del pleito o en la súplica del remedio, no será óbice para que el tribunal conceda el remedio que proceda de acuerdo con las alegaciones y la prueba". Regla 70 de Procedimiento Civil, 32 L.P.R.A. Ap. III.

([3]) La demanda también incorporaba una causa de acción a base del Título VII de la Ley Federal de Derechos Civiles. Con relación a ésta los demandados arguyeron que procedía su desestimación dado que Sánchez no había cumplido con el requisito jurisdiccional de presentar una querella ante el *Equal Employment Opportunity Commission* (en adelante E.E.O.C.). La parte demandante no se opuso oportunamente a esta defensa. El tribunal sentenciador acogió la postura de los demandados y desestimó esta causa de acción. No está planteada ante nos la corrección de esta actuación.

nosotros en *Cintrón v. E.L.A.*, 127 D.P.R. 582 (1990). Señaló que entre las gestiones ante la Autoridad y las acciones judiciales no existía identidad. En cuanto a la Ley Núm. 100, *supra*, citó el caso *Srio. del Trabajo v. F.H. Co., Inc.*, 116 D.P.R. 823 (1986), y resolvió que la acción estaba prescrita puesto que no se presentó una acción ante la Unidad Antidiscrimen del Departamento del Trabajo, lo que hubiese interrumpido el término.

La parte demandante recurrente acudió ante nos solicitando la revisión de la sentencia desestimatoria emitida por el tribunal de instancia. Señala que erró el tribunal sentenciador al desestimar la acción. En lo pertinente, le imputa al Tribunal de Primera Instancia haber errado "al desestimar la demanda ... ya que la acción administrativa interrumpió el término prescriptivo y, en la alternativa, el cómputo del término prescriptivo debe comenzar desde el 20 de julio de 1990".[4] Por las razones que expondremos entendemos que a la parte recurrente le asiste la razón, por lo que dejaríamos sin efecto la sentencia recurrida.

## II

La sentencia recurrida sostiene que ninguna de las gestiones efectuadas por Sánchez ante la Autoridad tuvo efecto alguno sobre el término prescriptivo de las acciones que posteriormente incoó judicialmente. Al así resolver no se sopesaron adecuadamente las particulares características de las acciones por hostigamiento sexual. Además, se omitió considerar la Ley Núm. 17, *supra*, y su historial.

La controversia principal que plantea el presente recurso se resuelve atendiendo la clara intención legislativa respecto a la interrupción del término prescriptivo de las acciones por hostigamiento sexual. La Ley Núm. 17, *supra*, se aprobó con el particular propósito de prohibir el hostigamiento sexual en el empleo. Esta ley complementa las

---

[4] El 20 de julio de 1991 era sábado, por lo que al amparo de esta tesis el último día hábil para presentar la demanda fue el lunes 22 de julio de 1991.

otras leyes que prohíben la discriminación en el empleo.([5]) Atiende y define particularmente la vertiente del hostigamiento sexual. Surge del Informe del Senado en torno al P. del S. 1437, predecesor de la Ley Núm. 17, *supra,* que la intención del legislador respecto al asunto que nos ocupa era en el sentido de que todo trámite interno de querella ante el patrono interrumpiría el período prescriptivo en favor del querellante. En este sentido expresó lo siguiente:

> La medida no establece un término prescriptivo para las acciones que se pueden radicar a su amparo debido a que este aspecto ya ha sido establecido en el artículo 1868 del Código Civil, 31 LPRA sec. 5298 que fija el término de un año para las acciones de daños y perjuicios por responsabilidad extracontractual como lo es en el aspecto que recoge esta medida. Al estar establecido en el ordenamiento civil que es supletorio a esta medida, artículo 12 del Código Civil, 31 LPRA sec. 12, se configuran adecuadamente los diversos aspectos que están relacionados a esta ley, incluyendo todo lo relativo a la prescripción de las acciones y su interrupción (artículo 1873, 31 LPRA sec. 5303). *En este sentido deberá interpretarse que, de acogerse voluntariamente un obrero a un procedimiento administrativo interno de una empresa, o de arbitraje, o en virtud de un convenio colectivo, se entenderá interrumpido el término prescriptivo, por todo el tiempo que duren estas gestiones.* Informe de las Comisiones de lo Jurídico Civil, sobre Asuntos de la Mujer y del Trabajo y Asuntos del Veterano, sobre el P. del S. 1437 de 23 de marzo de 1988, 10ma Asamblea Legislativa, 4ta Sesión Ordinaria, págs. 15–16.

Al así disponer aludió al concepto de interrupción por gestiones de inteligencia entre las partes, que aplicamos en el caso de *Casa Jaime v. Castro,* 89 D.P.R. 702 (1963). El hecho de que en las ocasiones en que hemos analizado controversias sobre el efecto interruptor de gestiones extrajudiciales en relación con las acciones para reclamar indemnización por violación a los derechos civiles no hayamos aplicado el referido criterio, no debe ser óbice para hacer valer aquí la expresa intención legislativa en este respecto.

---

([5]) Particularmente la Ley Núm. 69 de 6 de julio de 1985 (29 L.P.R.A. sec. 1321 *et seq.*) y la Ley Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. sec. 146 *et seq.*

Tampoco debe serlo el hecho que después de nuestras decisiones al respecto el legislador no haya actuado para convalidar mediante legislación la intención reseñada. Después de todo, no existe razón para que el legislador haya actuado de esa forma. Dichas decisiones, que discutiremos subsiguientemente en la presente opinión, no trataban el problema específico que se nos presenta en el caso de autos, por lo que no puede entenderse que ellas disponían de la presente controversia de forma contraria a la que resolvemos. Más aún, como veremos, los criterios que sostuvieron aquellas decisiones son enteramente aplicables a la controversia de marras.

Un breve análisis de las normas que anteriormente hemos expuesto en cuanto a la interrupción de las acciones bajo la Ley Núm. 100, *supra*, mediante trámites ante la Unidad Antidiscrimen del Departamento del Trabajo o la Oficina Federal de Igualdad de Oportunidades en el Empleo (en adelante E.E.O.C.), refleja que éstas son enteramente inaplicables a casos como el de autos. Sin embargo, los criterios de análisis que hemos utilizado en estas ocasiones, sí son de entera aplicación. Veamos.

En *Srio. del Trabajo v. F.H. Co., Inc.*, supra, resolvimos que la notificación al patrono dentro del término prescriptivo de una querella que presentó el empleado ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos, tuvo el efecto de interrumpir el término prescriptivo de la acción de daños y perjuicios que luego instó el Secretario del mencionado departamento en el foro judicial. Dicha notificación constituyó una reclamación extrajudicial, dado que los propósitos que perseguían la acción administrativa y la acción judicial eran idénticos. Allí dispusimos que: "Resolver lo contrario iría en contra de la política pública del Estado, pues serán pocos los trabajadores que acudirían en auxilio inicialmente al Departamento del Trabajo y Recursos Humanos por temor a que su reclamación prescribiera." *Srio. del Trabajo v. F.H. Co., Inc.*, supra, págs. 827–828.

En atención al mismo criterio de identidad de propósitos, resolvimos en *Cintrón v. E.L.A.*, supra, que la apelación de un empleado a la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.) de una orden del Departamento de Educación trasladando al empleado, no interrumpió el término prescriptivo de la acción judicial para reclamar daños y perjuicios alegadamente provocados por el traslado. Distinguiendo los esquemas que presentaban las leyes involucradas en *Srio. del Trabajo v. F.H. Co., Inc.*, supra (Ley Núm. 100, *supra*) y en *Cintrón v. E.L.A.*, supra, pág. 594 (Ley de Personal del Servicio Público de Puerto Rico), en este último dijimos que:

> Bajo ese esquema legislativo, presente en *Srio. del Trabajo v. F.H. Co., Inc.*, supra, era forzoso concluir que la presentación de la querella administrativa era la pretensión o reclamación extrajudicial eficaz para interrumpir el término prescriptivo.
>
> Distinta es la situación bajo el esquema legislativo y remedial de J.A.S.A.P.[6]

Siguiendo las normas antes reseñadas, en *Matos Molero v. Roche Products, Inc.*, 132 D.P.R. 470 (1993), resolvimos que la notificación al patrono de una copia de la querella presentada ante el E.E.O.C., alegando discrimen en el empleo, interrumpió el período prescriptivo para incoar una acción judicial bajo la Ley Núm. 100, *supra*. Es decir, esta notificación constituía una reclamación extrajudicial suficiente, bajo las disposiciones pertinentes de nuestro ordenamiento civil, y tuvo el efecto de interrumpir el período prescriptivo para presentar en los tribunales de Puerto Rico la correspondiente acción judicial para reclamar el debido resarcimiento.

Cabe destacar que el criterio de identidad de propósitos utilizado en los reseñados casos no supone que la acción judicial y la gestión administrativa muestren completa identidad en cuanto a naturaleza, contenido y alcance,

---

[6] En *Cintrón v. E.L.A.*, 127 D.P.R. 582, 594 (1990), también expresamos en la nota al calce número 6: "Semejante esquema legislativo y remedial al de *Srio. del Trabajo v. F.H. Co., Inc.*, lo encontramos en ... la Ley Núm. 17 de 22 de abril de 1988 (29 L.P.R.A. sec. 155 *et seq.*), sobre hostigamiento sexual ...."

para que el término en relación con la primera quede interrumpido por virtud del ejercicio de la segunda. Es decir, el criterio no requiere que se trate de una misma acción que se pueda presentar indistintamente en uno u otro foro, sino que busca atender los propósitos que se persiguen en ambos foros. En *Cintrón v. E.L.A.*, supra, pág. 594, donde resolvimos que la apelación ante J.A.S.A.P. no interrumpía el período prescriptivo correspondiente, señalamos que:

> ... La Ley de Personal y su reglamento no conceden a J.A.S.A.P. la facultad de responsabilizar civilmente a las agencias administrativas que le violan los derechos estatutarios o constitucionales a los empleados públicos.

De ahí que se pueda entender que para que se interrumpa el período prescriptivo pertinente, la gestión extrajudicial en estos casos debe permitir recobrar el resarcimiento que luego se busque bajo la acción judicial. Sin embargo, este elemento no es determinante en cuanto al asunto que nos ocupa. Es por ello que en *Srio. del Trabajo v. F.H. Co, Inc.*, supra, y *Matos Molero v. Roche Products, Inc.*, supra, resolvimos que las gestiones ante la Unidad Antidiscrimen del Departamento del Trabajo y el E.E.O.C., respectivamente, sí interrumpían el período prescriptivo de las acciones que eventualmente se presentaron ante los tribunales, aunque ninguna de las dos agencias tiene la facultad para hacer una concesión en daños, ordenando un resarcimiento económico. Las agencias, sin embargo, sí están autorizadas a efectuar una determinación inicial de responsabilidad.

Lo que verdaderamente define el criterio de la identidad de propósitos entre una y otra acción es el esquema legislativo que viabiliza la actuación administrativa. En los casos reseñados, en que hemos reconocido efecto interruptor a las gestiones extrajudiciales, hemos analizado si el esquema sobre el cual se ciernen dichas gestiones "provee el medio de revelar la intención o voluntad del acreedor de conservar y exigir el derecho al resarcimiento de los daños y perjuicios sufridos". *Cintrón v. E.L.A.*, supra, pág. 595.

En este caso no reconocimos efecto interruptor ya que los remedios que podía impartir J.A.S.A.P. se limitaban tan solo "a la reinstalación y al pago de los haberes dejados de percibir por los empleados públicos. Además, tales remedios se impon[ía]n a la agencia y no necesariamente al causante del daño". (Cita omitida.) *Cintrón v. E.L.A.*, supra, pág. 594. De ahí que al acudir a J.A.S.A.P., el perjudicado en *Cintrón v. E.L.A.*, supra, no demostró su intención de conservar su derecho al resarcimiento. En *Srio. del Trabajo v. F.H. Co., Inc.*, supra, y *Matos Molero v. Roche Products, Inc.*, supra, por el contrario, las acciones ante la Unidad Antidiscrimen del Departamento del Trabajo y el E.E.O.C., respectivamente, sí revelaban tal intención. Estas agencias, aunque no conceden daños o permiten directamente un resarcimiento económico, hacen una determinación inicial de conducta ilegal que establece, aunque sólo sea preliminarmente, la responsabilidad de alguna persona, natural o jurídica, por conducta discriminatoria contraria a la ley. El propósito de las actuaciones administrativas en estos casos era identificar la ilegalidad de la conducta discriminatoria de una persona.

El esquema creado por la Ley Núm. 17, *supra*, es similar al que tuvimos presente en los casos en que determinamos que las actuaciones extrajudiciales han interrumpido el período prescriptivo, aunque el trámite que promueve la Ley Núm. 17, *supra*, no necesariamente contempla el acudir a una agencia administrativa. En su Art. 1 (29 L.P.R.A. sec. 155), se estableció la política pública del Estado en torno al hostigamiento sexual. Allí se dispuso lo siguiente:

Esta Asamblea Legislativa resuelve y declara como política pública del Estado Libre Asociado de Puerto Rico que el hostigamiento sexual en el empleo es una forma de discrimen por razón de sexo y como tal constituye una práctica ilegal e indeseable que atenta contra el principio constitucional establecido de que la dignidad del ser humano es inviolable. Es la intención de esta Asamblea Legislativa prohibir el hostigamiento sexual en el empleo, imponer responsabilidades y fijar penalidades. Art. 1 de la Ley Núm. 17, *supra*, 29 L.P.R.A. sec. 155.

La ley define lo que constituye hostigamiento sexual en el empleo (Art. 3 (29 L.P.R.A. sec. 155b)); fija las instancias en las que será responsable el patrono por conducta constitutiva de hostigamiento sexual (Arts. 5–9 (29 L.P.R.A. secs. 155d–155h)), y establece los deberes del patrono (Art. 10 (29 L.P.R.A. sec. 155i)). Entre estos deberes es necesario resaltar el dispuesto en el inciso (d) del Art. 10, *supra*. Se dispone allí qué:

> Todo patrono tiene el deber de mantener el centro de trabajo libre de hostigamiento sexual e intimidación y deberá exponer claramente su política contra el hostigamiento sexual ante sus supervisores y empleados y garantizará que puedan trabajar con seguridad y dignidad. Cumpliendo con la obligación que se le impone al patrono de prevenir, desalentar y evitar el hostigamiento sexual en el empleo, éste deberá tomar las medidas que sean necesarias o convenientes con ese propósito incluyendo, pero sin limitarse, a las siguientes:
>
> .    .    .    .    .    .    .    .
>
> (d) Establecer un procedimiento interno adecuado y efectivo para atender querellas de hostigamiento sexual. Art. 10(d) de la Ley Núm. 17, *supra*, 29 L.P.R.A. sec. 155i(d).

Es así como la ley promueve que, en aras de eliminar el problema del hostigamiento sexual en el empleo, el patrono se asegure del cumplimiento con la ley mediante procesos internos efectivos. De esta forma también se fomenta la pronta solución extrajudicial de estos problemas y la preservación de un ambiente laboral que propicie el máximo rendimiento y la garantía a todo empleado de la "protección contra riesgos para su salud o integridad personal en su trabajo o empleo ...". Art. II, Sec. 16, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 327.

En cumplimiento con los deberes que promueve la ley contra el hostigamiento sexual en el empleo, y particularmente el que requiere el establecimiento de un procedimiento interno para la atención de querellas por hostigamiento sexual, la Autoridad creó la Oficina de Igualdad de Oportunidades en el Empleo. Ésta, entre otras, tiene la responsabilidad de tramitar inicialmente las querellas que se le presentan por alegados actos de hostigamiento

sexual. Son responsables de investigar los hechos alegados en la querella. De sus gestiones se emiten determinaciones en torno a la responsabilidad del querellado y recomendaciones sobre el curso a seguir en torno a la querella. De ser necesario, se refiere el caso a otras unidades de la Autoridad con el fin de establecer la responsabilidad del querellado.

Vemos así que el esquema creado por la Ley Núm. 17, *supra*, aplicable al caso de autos, tiene como uno de sus propósitos el fijar responsabilidades por los alegados actos de hostigamiento sexual, mediante el trámite interno que a los efectos cree el patrono en cumplimiento con la ley. Este es el mismo propósito que perseguiría la parte perjudicada mediante el proceso judicial correspondiente, con la única diferencia de que en este último caso le sería accesible al perjudicado una indemnización económica por los daños sufridos, lo cual obviamente no está disponible mediante el trámite interno ante el patrono. Se cumple así el principio de identidad en los propósitos que hemos resaltado como determinante para fines de disponer sobre la efectividad interruptora del trámite extrajudicial en cuanto a la acción judicial.

Así es que, tal cual sostiene la recurrente, de haber comenzado a decursar el período prescriptivo antes de 20 de julio de 1990, cuando Sánchez efectivamente dejó de trabajar en la Autoridad, el mismo había sido interrumpido mediante las gestiones efectuadas por Sánchez ante la Autoridad, y no comenzó a decursar hasta el 20 de julio de 1990. Aquí, como en *Srio. del Trabajo v. F.H. Co., Inc.*, supra, págs. 827–828, "[r]esolver lo contrario iría en contra de la política pública del Estado, pues serán pocos los trabajadores que acudirían ... inicialmente [a su patrono] por temor a que su reclamación prescribiera".

Además, de lo anterior, queremos dejar constancia de nuestra profunda preocupación con relación a lo discutido por algunos Jueces de este Tribunal respecto al punto de partida del período prescriptivo de las acciones por hostigamiento sexual, en su vertiente de ambiente hostil. En

este sentido, se trata de sostener la postura de que en estos casos sería de aplicación la doctrina de los daños sucesivos. Se señala que en estos casos, para que la acción no prescriba, es necesario probar que "[a]l menos *uno de los alegados incidentes sufridos* por la parte demandante debe haber ocurrido dentro del año anterior a la presentación de la demanda ...". (Énfasis suplido.) Opinión disidente del Juez Asociado Señor Hernández Denton, pág. 922. Dicha postura no considera la particular naturaleza de las situaciones que se producen cuando se crea un ambiente hostil.

Sucintamente, esta acción no está necesariamente constituida por actuaciones concretas o fácilmente discernibles. Esto es particularmente cierto en nuestra sociedad, donde la conducta que hoy calificamos como hostigante desafortunadamente ha formado parte de nuestro folklore durante décadas. Tampoco se crea el ambiente hostil necesariamente por la ocurrencia de un sólo acto. Por el contrario, por su propia naturaleza, esta acción ordinariamente presentará una serie de actos que en conjunto producirán el efecto dañino. Ello se reconoce implícitamente en la descripción que al respecto contiene la Ley Núm. 17, *supra.* En su citado Art. 3 dispone dicha ley, en lo pertinente:

> El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier otra conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:
>
> (c) Cuando esta conducta tiene el efecto o propósito de *interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo.* 29 L.P.R.A. sec. 155b(c).

Igualmente, esta característica ha sido reconocida en nuestra jurisprudencia. Al respecto hemos indicado que:

> A fin de cuentas, la pregunta de umbral en toda reclamación de acuerdo con [la modalidad de hostigamiento sexual por ambiente hostil] es si la alegada conducta constitutiva de hostigamiento fue lo suficientemente severa y ofensiva como para alterar las condiciones del empleo y crear un ambiente de trabajo

abusivo. *Rodríguez Meléndez v. Supermercado Amigo, Inc.*, 126 D.P.R. 117, 132 (1990).

Estas particulares características de la acción por hostigamiento sexual por ambiente hostil hacen que la misma no sea fácilmente discernible. La situación se agrava cuando vemos el criterio que ha adoptado la ley para determinar la ocurrencia del hostigamiento. Dice ésta que:

> Para determinar si la alegada conducta constituye hostigamiento sexual en el empleo se considerará la totalidad de las circunstancias en que ocurrieron los hechos. La determinación de la legalidad de una acción se hará basada en los hechos de cada caso en particular. Art. 4 de la Ley Núm. 17, *supra*, 29 L.P.R.A. sec. 155c.

En el mismo sentido hemos dispuesto en el pasado que "el asunto a decidir es si la conducta degradante, así como los gestos y las expresiones sexuales, han causado en el demandante tal ansiedad y han debilitado su estima propia y confianza, que han contaminado impermisiblemente las condiciones del empleo". *Rodríguez Meléndez v. Sup. Amigo, Inc.*, supra.[7] De lo anterior se puede colegir lo oneroso que sería para la víctima de este tipo de discrimen la aplicación de la postura que sostienen hoy algunos Jueces de este Tribunal. Nótese que se le estaría pidiendo a esta persona que pudiera identificar, bajo los efectos que produce el hostigamiento, lo que es extremadamente díficil determinar aun para un tribunal, dentro de un proceso adversativo. Es decir, en el presente caso se le estaría pidiendo a Sánchez que hubiera identificado, para fines de la acción por ambiente hostil, cuáles de los actos de Santiago

---

[7] La problemática se agrava aún más si consideramos cuál será la perspectiva desde la cual se analizará la conducta para determinar la creación del ambiente hostil vedado; es decir, será un criterio subjetivo o uno objetivo; si es objetivo, será bajo el consabido concepto de la persona prudente y razonable. Para una discusión respecto a este problema en la jurisdicción federal, véanse: *Comments, Sexual Harassment from the Victim's Perspective: The Need for the Seventh Circuit to Adopt the Reasonable Woman Standard*, 77 Marq. L. Rev. 85 (1993); E .A. Glidden, *The Emergence of the Reasonable Woman in Combating Hostile Environment Sexual Harassment*, 77 Iowa L. Rev. 1825 (1992).

produjeron un ambiente de trabajo intimidante, hostil u ofensivo, para que ella supiera que desde esa fecha comenzaba a decursar el período prescriptivo de un (1) año. Más aún, se le estaría exigiendo que no se equivocara al analizar un acto, puesto que de entender ella que cierta conducta forma parte del patrón que contribuyó a la creación del ambiente hostil y que desde esa fecha comenzaba a decursar el período prescriptivo, si un tribunal determinara lo contrario con posterioridad, ella perdería el derecho a exigir resarcimiento. Se hace muy difícil identificar este punto, más aún cuando, como en el presente caso, las personas llamadas a investigar las querellas por hostigamiento sexual tratan de persuadir al promovente de la acción para que desista de la misma, indicándole que todo puede ser, más un producto de su imaginación que otra cosa.

Esta situación podría, desgraciadamente, ser más la norma que la excepción. Así lo reconoció la Legislatura al aprobar la Ley Núm. 17, *supra.* Al respecto se dijo en el Informe del P. del S. 1437:

> El hostigamiento sexual es un ... problema escondido bajo un manto de silencio y minimización. Se le trata como un asunto personal fuera del ámbito de la responsabilidad patronal asumiendo que el control de la situación le corresponde a la parte perjudicada.
>
> Plantear que el hostigamiento sexual es un problema personal es pasar por alto la relación de poder que hay de manera explícita e implícita en toda manifestación de hostigamiento sexual.
>
> Plantear que la parte perjudicada es la que tiene que frenar el hostigamiento sexual es pretender que ésta asuma el control sobre una situación cuya autoridad principal recae en la figura del patrono. Informe de la Comisión Especial de Asuntos de la Mujer sobre el P. de la C. 1437 de 9 de marzo de 1988, 10ma Asamblea Legislativa, 4ta Sesión Ordinaria, pág. 2.

Es esta visión la que probablemente provoca que en muchas ocasiones las personas que son víctimas de hostigamiento sexual no lo reporten a las autoridades.([8])

Estas características del problema han sido también reconocidas en otros estudios. Por ejemplo, en el estado de Nueva York el Gobernador creó una comisión para analizar el problema del hostigamiento sexual en todas las esferas. A partir de 1992 la comisión llevó a cabo la investigación. Respecto a los hallazgos se ha expresado lo siguiente:

> What the Task Force learned from this unprecedented effort can be stated in sum sexual harassment exists in workplaces and educational institutions across the State of New York. It is a deeply rooted, multi-faceted, pervasive problem that has devastating economic, physical, and emotional consequences not only for its victims, but for their families, their communities, their co-workers, and their employers. Sexual harassment demands comprehensive, compassionate and reasoned solutions that focus on prevention.
>
> .     .     .     .     .     .     .     .
>
> From the testimony of victims, the Task Force gained an understanding of the behaviors that constitute sexual harassment. Sexual harassment is about the abuse of power. It is not about sex. It is not about romance. Sexual harassment raises difficult and frightening issues about sexuality, power, personal relationships, and the ways in which we value or devalue individuals. *The silence of the victims of sexual harassment, a direct result of the fear and humiliation they feel and of society's persistent refusal to believe their claims,* has contributed to our ability to deny the gravity and extent of the problem. Yet, sexual harassment is real, and its impact is devastating.

---

([8]) A esta conclusión llegaron las Comisiones sobre Asuntos de la Mujer, Jurídico Civil, Trabajo y Asuntos del Veterano, de la Cámara de Representantes de la 10ma Asamblea Legislativa, después de un estudio exhaustivo que se les comisionara mediante la R. de la C. 482. Dijeron en el Informe que al efecto redactaron:

"1. La práctica del [h]ostigamiento [s]exual en el empleo [que] existe en Puerto Rico no obstante su magnitud e incidencia no se ha estudiado sobre una base empírica y factual por causa de no existir verdadera conciencia del problema, falta de los recursos disponibles [sic] para realizar dicho estudio y porque las víctimas en la mayoría mujeres, *son renuentes a exponer el problema ante las autoridades.*

2. *"La renuncia* [sic] *de las víctimas a ocultar hechos de hostigamiento sexual en el empleo se debe al temor del rechazo de la sociedad, se atente contra su honestidad y a que se tomen represalias contra ellas y pierdan el empleo."* (Énfasis suplido.) Informe de las Comisiones sobre Asuntos de la Mujer, Jurídico Civil, Trabajo y Asuntos del Veterano sobre la R. de la C. 482 de 13 de enero de 1985, 10ma Asamblea Legislativa, 2da Sesión Ordinaria, pág. 11.

The victims of sexual harassment are young and old, African American, Latino, Asian American, white, Native American, high ranking executives and clerks, students and teachers, rich and poor. The experience of sexual harassment victims is shockingly similar, regardless of the characteristics of the victim, the employer, the educational institution, or the community in which it occurs. Victims who do not make formal complaints (95% of all victims, according to studies) suffer terrible personal consequences. They blame themselves for somehow provoking the harassment, they doubt their own judgment about what has happened to them, they change their work or study patterns and give up opportunities in order to avoid harassers or those who support them, and they often suffer physical and psychological damage as a result. They also lose trust in and respect for their employers or teachers.

Victims who do make formal complaints suffer as much or more. They often are isolated by their employers, co-workers, teachers, and fellow students. They are threatened, intimidated, doubted, and often retaliated against. Virtually every victim with whom the Task Force met had lost a job, and in some cases a career, subsequent to making a complaint about sexual harassment. Some even had their lives and their families threatened. Many of the victims were blackballed from the industries in which they worked. Others depleted their savings or lost their homes trying to pay for their litigation costs. None got rich from their lawsuits. Indeed, none was ever made whole, even when they prevailed in court. (Énfasis suplido.) J.I. Avner, *Sexual Harassment: Building a Consensus for Change*, 3 (Núm. 3) Kan. J.L. & Pub. Pol'y 57, 58 (1994).

Al resolver casos como el presente, que inciden sobre un problema social tan trascendental y dañino, debemos considerar estas particularidades.

En nuestra jurisdicción impera la teoría cognoscitiva del daño, para fines de determinar el punto de partida de las acciones en daños y perjuicios. La misma postula que el período prescriptivo de una acción civil por daños y perjuicios comienza a decursar desde que el agraviado tuvo conocimiento del mismo, según sostiene el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298. No se puede olvidar, sin embargo, que el Art. 1869 del mismo cuerpo legal, 31 L.P.R.A. sec. 5299, dispone que: "El tiempo para la prescripción de toda clase de acciones, cuando no haya disposición especial que otra cosa determine, se contará *desde el día en que pudieran ejercitarse.*" (Énfasis suplido.) En

atención a estas disposiciones y de conformidad con la tendencia liberal en la doctrina civilista en lo relativo a la prescripción, hemos dicho que "el verdadero punto de partida para el inicio del término prescriptivo de una acción de daños y perjuicios es la fecha que el agraviado supo del daño *y pudo ejercitar su acción*". (Énfasis en el original.) *Vega v. J. Pérez & Cía., Inc.*, 135 D.P.R. 746, 754 (1994). "Evidentemente se trata de un asunto que admite ajustes judiciales, según lo requieran las circunstancias y nuestras nociones sobre lo que es justo .... Conforme a [la tendencia liberal a la que hemos aludido], por consideraciones de justicia, se estima que el término para ejercer las acciones corre a partir, no desde que se sufre el daño reparable, sino desde que se conocen los otros elementos necesarios para poder ejercer la acción." *Vega v. J. Pérez & Cía., Inc.*, supra, pág. 754.([9])

Estos principios normativos deben guiar nuestro ánimo al decidir sobre el punto de partida del período prescriptivo correspondiente a las acciones por la creación de un ambiente hostil de trabajo. La postura adoptada por algunos Jueces de este Tribunal, respecto a la aplicación de los principios de daños sucesivos, aunque aparenta estar en conformidad con la doctrina civilista, se aparta perjudicialmente de las situaciones de hecho sobre las cuales sería de aplicación la norma que allí se propone. Después de todo:

> La institución de la prescripción extintiva aspira a asegurar la estabilidad de la propiedad y la certidumbre de los demás derechos. Su innegable necesidad y valor responden a "una presunción legal de abandono, derivada del hecho del transcurso de un tiempo determinado sin reclamar un derecho". Sin embargo, ninguno de los intereses a los cuales responde es absoluto —de un lado salvaguardar un derecho y del otro darle carácter definido a la incertidumbre de una posible reclamación— sino que deben ser aquilatados en su justa proyección. *Colón Prieto v. Géigel*, 115 D.P.R. 232, 243 (1984).

---

([9]) Para la aplicación de estos principios, véanse: *Vega v. J. Pérez & Cía., Inc.*, 135 D.P.R. 746 (1994); *Riley v. Rodríguez de Pacheco*, 119 D.P.R. 762 (1987); *Colón Prieto v. Géigel*, 115 D.P.R. 232 (1984).

Nuestras decisiones respecto a esta figura deben atender los hechos sobre los cuales será de aplicación la norma que esbocemos.

La referencia que hacen algunos jueces a la doctrina federal creada jurisprudencialmente, conocida como el *continuing doctrine violation*, omite considerar las críticas de que ha sido objeto cuando se trata de su aplicación a acciones por ambiente hostil. Al respecto se resalta que la adopción de dicha doctrina precedió al nacimiento de la causa de acción por ambiente hostil bajo el Título VII de la Ley Federal de Derechos Civiles. Su aplicación a las situaciones que hasta entonces habían caracterizado las acciones bajo la referida legislación no produjo críticas significativas. Entonces se trataba de acciones discriminatorias concretas: rechazo de oportunidades de promoción, degradación, traslado, disminución de sueldo y despido. Como hemos visto, la naturaleza de la acción por hostigamiento sexual a base de la creación de un ambiente hostil, no permite tan clara demarcación de los actos constitutivos de hostigamiento o discrimen. Por lo tanto, la aplicación de los principios de dicha doctrina en nuestra jurisdicción, vía la doctrina de los daños sucesivos, produciría un desface en la observancia de los intereses que debemos tutelar por medio de la figura de la prescripción extintiva.[10]

En estos casos la atención principal debe recaer sobre el ambiente que ha producido la conducta y no sobre cada acto por separado. El término prescriptivo en acciones por la creación de un ambiente hostil de trabajo debe comenzar a decursar desde que cese dicho ambiente. Esta norma reconoce que el término prescriptivo por la creación de un ambiente hostil debe comenzar a decursar cuando se disipan las circunstancias que podrían entorpecer el ejercicio de la acción. La norma tampoco perjudica indebidamente al patrono, puesto que en la medida en que esté presente el

---

[10] Para una crítica de la aplicación del *continuing violation doctrine* a casos de ambiente hostil en la jurisdicción federal, véase Paetxold & O'Leary-Kelly, *Continuing Violations and Hostile Environment Sexual Harassment: When is Enough, Enough?*, 31 American Business L.J. 365 (1993).

ambiente hostil éste tendrá la oportunidad de conocer los hechos y tratar de remediarlos.

Por las razones esbozadas, concurrimos. Dejaríamos sin efecto la sentencia recurrida y devolveríamos el caso al tribunal de instancia para la continuación de los procedimientos de forma consistente con lo aquí esbozado.([11])

— O —

Opinión disidente emitida por el Juez Asociado Señor Hernández Denton, a la cual se unen el Juez Presidente Señor Andréu García y el Juez Asociado Señor Corrada Del Río.

Mediante recurso de revisión acude ante nos María de los Ángeles Sánchez y solicita que revoquemos la sentencia dictada por el Tribunal Superior, Sala de San Juan, que desestimó su demanda por despido constructivo y hostigamiento sexual al amparo de la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. sec. 146 *et seq.*) —en adelante Ley Núm. 100— y del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, por motivo de prescripción. Por entender que las causas de acción de Sánchez están prescritas, disentimos de la sentencia emitida por este Tribunal.

---

([11]) Respecto al comienzo del término prescriptivo de la acción por despido constructivo, al aplicar lo resuelto en *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988), se debe reconocer como criterio rector la finalidad de la decisión sobre el despido, desde la perspectiva del patrono. En *Delgado Rodríguez v. Nazario de Ferrer*, supra, no era razonable entender que el patrono habría de cambiar su parecer respecto al despido, después de haberle notificado el mismo al empleado. De ahí que el criterio de la finalidad imponía la decisión de que al notificársele el despido, el empleado advino en conocimiento del daño; desde ese momento comenzó a decursar el período prescriptivo correspondiente. En el caso de autos, por el contrario, de la notificación por el empleado de su intención de renunciar, junto a las demás circunstancias esbozadas, no surge el cumplimiento del criterio de la finalidad. Aquí la finalidad surgió al momento de hacerse efectiva la renuncia.

I

La demandante, María de los Ángeles Sánchez, era empleada de la Autoridad de Energía Eléctrica (en adelante la Autoridad) desde 1988, donde se desempeñaba como analista de computadoras. Alega que fue hostigada sexualmente por Omar Santiago, un compañero de trabajo en la Autoridad. Los alegados actos se iniciaron en septiembre de 1988. Surge del expediente en el caso de epígrafe que Sánchez presentó tres (3) querellas contra Santiago en la Oficina de Igualdad de Oportunidades en el Empleo de la Autoridad. Las querellas fueron presentadas en diciembre de 1988, mayo de 1989 y abril de 1990. En las tres (3) se solicitaba la formulación de cargos disciplinarios contra Santiago.

El 2 de julio de 1990 Sánchez presentó su carta de renuncia, la cual sería efectiva el 20 de julio del mismo año. En la misma indicó que su renuncia se debía a la conducta desplegada por Santiago y a la repetida inacción de la Autoridad en cuanto a la situación.

El 22 de julio de 1991, Sánchez, sus padres y hermanas instaron una acción en daños y perjuicios contra la Autoridad, Omar Santiago y otros. En la demanda alegaron que Sánchez fue víctima de hostigamiento sexual por parte de Santiago y que la Autoridad se cruzó de brazos ante la situación a pesar de los múltiples reclamos de la demandante para que se corrigiera el problema, lo que motivó que ésta tuviera que renunciar a su empleo. La parte demandante fundamentó su reclamo en las Constituciones del Estado Libre Asociado de Puerto Rico y de Estados Unidos, en la Ley Núm. 100, en los Arts. 1802 y 1803 del Código Civil, 31 L.P.R.A. secs. 5141 y 5142, y en el Título VII de la Ley Federal de Derechos Civiles.

La Autoridad, por su parte, presentó una moción de desestimación en la que alegó que la causa de acción de Sánchez estaba prescrita por haberse instado más de un (1) año después de la fecha en que ésta tuvo conocimiento del

daño; esto es, la fecha en que Sánchez notificó su renuncia. Sánchez se opuso argumentando que las querellas presentadas tuvieron el efecto de interrumpir el término prescriptivo en el caso de epígrafe. En la alternativa, sostuvo que la causa de acción no estaba prescrita ya que el término prescriptivo debía comenzar a computarse desde el 20 de julio de 1990, fecha en que su renuncia fue efectiva, pues el ambiente hostil en el empleo prevaleció hasta esa fecha.

El Tribunal Superior desestimó la demanda de Sánchez. Razonó que su causa de acción estaba prescrita, ya que la reclamación por despido constructivo fue presentada fuera del año a partir del momento en que la demandante notificó su renuncia. Concluyó, además, que ninguna gestión administrativa de la parte demandante tuvo el efecto de interrumpir el término prescriptivo. El tribunal desestimó la causa de acción al amparo del Título VII de la Ley Federal de Derechos Civiles por incumplimiento con el requisito jurisdiccional de presentar una querella administrativa ante una oficina designada del *Equal Employment Opportunity Commission.*

Inconforme con esta decisión, Sánchez acude mediante recurso de revisión ante este Foro. En síntesis, alega que erró el tribunal de instancia al desestimar su demanda por prescripción. Señala que la acción administrativa instada en la Oficina de Igualdad de Oportunidades en el Empleo de la Autoridad tuvo el efecto de interrumpir el término prescriptivo de su causa de acción. En la alternativa, alega que el cómputo del término prescriptivo debe comenzar desde el 20 de julio de 1990, fecha en que fue efectiva su renuncia, y no desde la fecha en que ésta fue notificada.

En el caso de autos se plantean tres (3) controversias fundamentales: (1) ¿cuándo comienza a transcurrir el término prescriptivo de una causa de acción por despido constructivo?; (2) ¿cuándo comienza a transcurrir el término prescriptivo de una causa de acción por hostigamiento sexual en su modalidad de ambiente hostil?, y (3) ¿cómo se interrumpe el término prescriptivo de una causa de acción por discrimen en el empleo al amparo de la Ley Núm. 100

y del Art. 1802 del Código Civil, *supra,* por la vía administrativa?

## II

Para contestar las primeras dos (2) interrogantes debemos examinar la norma general aplicable al inicio del cómputo del término prescriptivo en nuestra jurisdicción. Sobre este particular, hemos reiterado en múltiples ocasiones que en Puerto Rico rige la teoría cognoscitiva del daño según recogida en el Art. 1868 del Código Civil, 31 L.P.R.A. sec. 5298. Dicha teoría postula que el término prescriptivo de una causa de acción comienza a transcurrir a partir del momento en que el perjudicado tuvo conocimiento del daño y pudo ejercitar la acción. *Vega v. J. Pérez & Cía., Inc.,* 135 D.P.R. 746 (1994); *Ortega et al. v. Pou et al.,* 135 D.P.R. 711 (1994); *Delgado Rodríguez v. Nazario de Ferrer,* 121 D.P.R. 347 (1988); *Colón Prieto v. Géigel,* 115 D.P.R. 232 (1984).

Conforme a esta teoría, hemos resuelto que el término prescriptivo de una causa de acción por despido ilegal comienza a contarse a partir del momento en que el empleado es notificado de su cesantía. *Delgado Rodríguez v. Nazario de Ferrer,* supra. Ello es así ya que el empleado adviene en conocimiento del daño desde el momento en que se le notifica su despido.

Aplicando la teoría cognoscitiva del daño llegamos a la conclusión de que el razonamiento expresado en *Delgado Rodríguez v. Nazario de Ferrer,* supra, para determinar el inicio del término prescriptivo de una causa de acción por despido ilegal es igualmente aplicable a una causa de acción por un despido constructivo.([1]) Esto se debe a las semejanzas existentes entre un despido constructivo y un

---

([1]) Un despido constructivo ocurre cuando la única alternativa razonable que le queda a un empleado es renunciar a su trabajo debido a actos voluntarios e injustificados del patrono encaminados a obligar al empleado a abandonar su cargo. *Vélez de Reilova v. R. Palmer Bros., Inc.,* 94 D.P.R. 175, 178 (1967). Véase, en cuanto al desarrollo más reciente de la doctrina de despido constructivo, a B.L. Schlei y P. Grossman, *Employment Discrimination Law,* Washington D.C., The Bureau of National Affairs, Inc., 1976, págs. 530–537.

despido común. En ambos el empleado tiene conocimiento del daño al momento de la notificación del despido o de la renuncia. Es en ese instante en que adviene en conocimiento de que tendrá que abandonar su empleo como resultado de la actuación patronal. Además, el daño sufrido por el empleado es el mismo en ambos casos: la pérdida de su empleo por actos alegadamente ilegales del patrono.

Por lo tanto, en los casos en que se reclamen daños y perjuicios como resultado de un despido constructivo el término prescriptivo de dicha causa de acción comienza a transcurrir desde que el empleado notifica su renuncia y no desde que ésta es efectiva. Desde ese momento el empleado manifiesta tener conocimiento del daño y está en posición de ejercer su causa de acción.

En vista de esta normativa, en el caso de autos la causa de acción de Sánchez por despido constructivo está prescrita ya que el término prescriptivo de ésta comenzó a transcurrir a partir de 2 de julio de 1990, fecha en que la demandante notificó su renuncia. En ese momento surgió su causa de acción al manifestar haber advenido en conocimiento del daño que motivó su renuncia al empleo.

La demanda fue presentada el 22 de julio de 1991.[2] Ya que se trata de un caso de discrimen en el empleo al amparo de la Ley Núm. 100 y del Art. 1802 del Código Civil, *supra,* la parte recurrente tenía un año para presentar la demanda a partir del momento en que surgió cada una de sus causas de acción; éstas son, despido constructivo y hostigamiento sexual. *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740 (1981).

En estas circunstancias, el foro de instancia resolvió correctamente que la acción de Sánchez estaba prescrita. En lugar de incoar su acción dentro del año de la notificación de su renuncia, Sánchez presentó su demanda por despido constructivo veinte (20) días después de la expiración del término prescriptivo.

---

[2] El 20 de julio de 1991 fue sábado.

## III

Sin embargo, lo anterior no dispone completamente del asunto ante nos. Debemos considerar si la causa de acción por hostigamiento sexual, al amparo del Art. 1802 del Código Civil, *supra*, y de la Ley Núm. 100 está prescrita. Para esto es necesario determinar cuándo comienza a transcurrir el período prescriptivo en este tipo de causa de acción.

Ante nos, Sánchez alega que su causa de acción es una por daños continuados por lo que el término prescriptivo de ésta no comienza a transcurrir hasta el momento en que concluye el ambiente hostil. Aduce que "sufrió daños continuos desde que comenzó el hostigamiento del Sr. Santiago hasta la fecha antes señalada, 20 de julio, toda vez que los recurridos tuvieron hasta esa fecha para cumplir con sus deberes y no lo hicieron".

Por su parte, el Procurador General sostiene que los actos de hostigamiento sexual que alegadamente sufrió la peticionaria eran sucesivos y que ella tenía pleno conocimiento de las consecuencias lesivas de cada acto. Implícito en ambas posiciones es que existe una distinción entre daños continuados y los sucesivos.

Nuestra jurisprudencia ha reconocido que existen diversas categorías de daños que tienen particular pertinencia en cuanto a la determinación del momento del conocimiento del daño y, por lo tanto, del comienzo del término prescriptivo.

En lo que respecta al caso de autos, los daños sucesivos son:

> ... una *secuencia de reconocimientos de consecuencias lesivas* por parte del perjudicado, las que se producen y manifiestan periódicamente, o aun continuamente, pero que se van *conociendo* en momentos distintos entre los que media un lapso de tiempo finito, sin que en momento alguno sean previsibles los daños subsiguientes, ni sea posible descubrirlos empleando diligencia razonable. (Énfasis en el original.) H.M. Brau Del Toro, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. II, pág. 643.

Se trata de actos u omisiones culposos o negligentes por parte del autor que se repiten periódicamente con sus correspondientes consecuencias lesivas, las que se manifiestan y se reconocen cada vez que ocurren. Es medular en esta categoría de daños que la repetición del daño no sea previsible. Explica Brau Del Toro:

> Cada uno de los daños unitarios que en conjunto constituyen los daños sucesivos presentes en dichos ejemplos constituye una unidad jurídica de "daño" que origina la correspondiente causa de acción resarcitoria. El término de prescripción para el ejercicio de cada una de ellas comienza a contar en el momento en que se reconoce el respectivo daño particular. Brau Del Toro, *op. cit.*, pág. 644.

En conclusión, cada manifestación y reconocimiento de una consecuencia lesiva causada por un acto culposo o negligente del actor constituye un daño distinto que origina una causa de acción independiente.

De otra parte, los daños continuados se definen como:

> ... aquéllos producidos por uno o más actos culposos o negligentes imputables al actor, coetáneos o no, que resultan en consecuenc[ia]s lesivas ininterrumpidas, sostenidas, duraderas sin interrupción, unidas entre sí, las cuales al ser conocidas hacen que también se conozca —por ser previsible— el carácter continuado e ininterrumpido de sus efectos, convirtiéndose en ese momento en un daño cierto compuesto por elementos de *daño actual* (aquel que ya ha acaecido), y de *daño futuro* previsible y por tanto cierto. Brau Del Toro, *op. cit.*, pág. 648. Véase *Galib Frangie v. El Vocero de P.R.*, 138 D.P.R. 560 (1995).

Esta categoría se refiere a casos en que han ocurrido uno o más actos culposos o negligentes cuyas consecuencias son ininterrumpidas y unidas entre sí, que se conocen en un momento dado y al momento de ser conocidas se puede prever que dichas consecuencias continuarán en el futuro incesante y sostenidamente. Es determinante en la categoría de daños continuados que los daños futuros sean previsibles.

Debemos aclarar, sin embargo, que el cómputo del término prescriptivo en un caso de daños continuados no se inicia, según sostiene la parte recurrente, desde que éstos

cesan. La jurisprudencia española moderna ha declarado con carácter general que en caso de daños continuados el cómputo del plazo de prescripción comienza en el momento de la producción del resultado definitivo. Véase M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1994, T. XXV, Vol. 2, págs. 454–464, citando las sentencias del Tribunal Supremo de España sobre casos de daños continuados de 24 de junio de 1993 (daños en vivienda como consecuencia de realización de obras en la planta inferior), 27 de junio de 1990 (daños en edificio por obras llevadas a cabo en un local del mismo por su propietaria), 12 de febrero de 1981 (daños producidos como consecuencia de emanaciones de gas provenientes de una industria), y 12 de diciembre de 1980 (daños a fincas colindantes derivados de la explotación de una cantera por efecto de voladuras).

De conformidad con la doctrina civilista, una causa de acción, como la del caso de epígrafe, fundamentada en incidentes sucesivos que resultaron en hostigamiento sexual en el empleo en su modalidad de ambiente hostil forma parte de la categoría de daños sucesivos. Ello es así pues dicha causa de acción se origina a base de una serie de actos sucesivos que se van conociendo en momentos distintos cuyo efecto es crear un ambiente hostil en el empleo. La parte perjudicada no puede prever que dichos actos continuarán ocurriendo. Surge, por lo tanto, un nuevo término prescriptivo cada vez que ocurre un acto que contribuye a la creación de un ambiente hostil en el empleo. Al menos uno de los alegados incidentes sufridos por la parte demandante debe haber ocurrido dentro del año anterior a la presentación de la demanda para que su causa de acción no esté prescrita.[3]

---

[3] A manera de comparación, en la jurisdicción federal se ha desarrollado la doctrina de *continuing violation* en casos en los cuales la causa de acción es por discrimen en el empleo al amparo del Título VII de la Ley Federal de Derechos Civiles de 1964 (42 U.S.C. sec. 2000e *et seq.*). Véanse: *Delaware State College v. Ricks*, 449 U.S. 250 (1980); *United Air Lines, Inc. v. Evans*, 431 U.S. 553 (1977). La aplicación de dicha doctrina tiene el efecto de relevar a la parte demandante de probar que todos los incidentes de discrimen ocurrieron dentro del período

En el caso de autos, Sánchez señala que se trata de un caso de daños continuados que se prolongaron hasta su último día de trabajo en la Autoridad, el 20 de julio de 1990. Alega que, a pesar de que notificó su renuncia el 2 de julio de 1990, la Autoridad se "cruzó de brazos" al no actuar para remediar la situación de hostigamiento sexual, por lo que continuó sufriendo daños hasta la fecha en que su renuncia fue efectiva. Nos indica que el término de prescripción de su causa de acción no comenzó a correr hasta el 20 de julio de 1990, por lo que su demanda, presentada exactamente un (1) año después, no está prescrita. Su argumentación no nos persuade.

Surge de la demanda que los incidentes particulares que motivaron las querellas presentadas por Sánchez en la Oficina de Igualdad de Oportunidades en el Empleo de la Autoridad ocurrieron separada y sucesivamente en diversas ocasiones y con anterioridad al 2 de julio de 1990, fecha en que ésta notificó su renuncia. No hay ninguna alegación ni en la demanda ni en el expediente del caso de autos a los efectos de que haya ocurrido otro incidente en una fecha posterior al 2 de julio. Sin embargo, la demanda por hostigamiento sexual no fue presentada hasta el 22 de julio de 1991, más de un (1) año después de notificada la renuncia. La parte recurrente no ha alegado que haya ocurrido un incidente de hostigamiento sexual dentro del período del año anterior a la presentación de la demanda por lo que somos del criterio que su causa de acción está prescrita.

---

prescriptivo. La parte debe probar, sin embargo, que al menos uno de los alegados incidentes ocurrió dentro de dicho período. *Sabree v. United Broth. of Carpenters and Joiners*, 921 F.2d 396 (1990); *Berry v. Board of Sup'rs of L.S.U.*, 715 F.2d 971 (1983).

En aquellos casos en que la causa de acción de la parte demandante se fundamenta en una política discriminatoria establecida por el patrono y no en incidentes aislados discriminatorios, los tribunales han diferido en cuanto a si la alegada política discriminatoria por sí sola constituye un *continuing violation* o si es necesario probar que le fue aplicada a la parte demandante dentro del período prescriptivo. Véanse: *McKenzie v. Sawyer*, 684 F.2d 62 (Cir. D.C. 1982); *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 924 (9no Cir. 1982); *Association Against Discrimination in Employment, Inc. v. City of Bridgeport*, 647 F.2d 256 (2do Cir. 1981); *Acha v. Beame*, 570 F.2d 57 (2do Cir. 1978).

## IV

Finalmente, para atender la tercera controversia planteada en el caso de epígrafe, sobre la interrupción del término prescriptivo de una causa de acción por discrimen en el empleo al amparo de la Ley Núm. 100 y el Art. 1802 del Código Civil, *supra*, debemos revisar las formas de interrupción reconocidas en nuestro Código Civil, Art. 1873 (31 L.P.R.A. sec. 5303):

> La prescripción de las acciones se interrumpe por su ejercicio ante los tribunales, por reclamación extrajudicial del acreedor y por cualquier acto de reconocimiento de la deuda por el deudor. Véase, además, *Feliciano v. A.A.A.*, 93 D.P.R. 655, 660 (1966).

Sobre este particular, hemos citado con aprobación a Díez-Picazo en cuanto afirma que " 'lo que la ley considera como acto de interrupción de la prescripción es el ejercicio de la misma acción que está prescribiendo' ". (Énfasis suprimido.) L. Díez-Picazo, *La prescripción en el Código Civil*, Barcelona, Ed. Bosch, 1964, pág. 109, citado en *Cintrón v. E.L.A.*, 127 D.P.R. 582, 592–593 (1990).

A la luz de lo anterior, hemos reconocido que una acción instada a nivel administrativo tiene el efecto de interrumpir el término prescriptivo de una causa de acción cuando existe identidad entre la acción administrativa y la acción judicial. *Cintrón v. E.L.A.*, supra. Como ejemplo de este tipo de situación mencionamos la acción administrativa presentada en la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos y la acción judicial al amparo de la Ley Núm. 100. Véase *Cintrón v. E.L.A.*, supra, que cita a *Srio. del Trabajo v. F.H. Co., Inc.*, 116 D.P.R. 823 (1986).

Al concluir que ambas acciones tenían identidad de propósitos, destacamos que el Art. 2 de la Ley Núm. 100 (29 L.P.R.A. sec. 147) faculta al empleado a instar una acción para solicitar responsabilidad civil de su patrono; que en virtud del Art. 4 de la misma ley la reclamación podía tramitarla el empleado mediante acción ordinaria o mediante

el procedimiento de querella establecido en la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. secs. 3118–3132), y que en virtud del Art. 5 de la Ley Núm. 100 (29 L.P.R.A. sec. 150) y la Sec. 1 de la Ley Núm. 2 (32 L.P.R.A. sec. 3118), el Secretario del Trabajo está facultado para instar la demanda, exigiendo responsabilidad civil del patrono, a iniciativa propia o a instancia del empleado, en representación y para beneficio de dicho empleado. *Cintrón v. E.L.A.*, supra.

Posteriormente, en *Matos Molero v. Roche Products, Inc.*, 132 D.P.R. 470 (1993), extendimos nuestros pronunciamientos en cuanto al efecto interruptor de la presentación de una querella ante la Unidad Antidiscrimen del Departamento del Trabajo a un caso en que la querella fue presentada ante la Oficina Federal de Igualdad de Oportunidades en el Empleo (E.E.O.C.), fundamentándonos en la estrecha relación de trabajo existente entre ambas agencias. Motivó nuestra decisión el hecho de que el efecto práctico del *Worksharing Agreement* existente entre ambas agencias es que "presentar un cargo ante la E.E.O.C. equivale a presentar el cargo ante la Unidad Antidiscrimen, ya que el mismo siempre le será diferido a esta última y notificado al querellado". *Matos Molero v. Roche Products, Inc.*, supra, pág. 486.

Según reconocimos en *Matos Molero v. Roche Products, Inc.*, supra, en mayo de 1991 la Asamblea Legislativa enmendó la Ley Núm. 100 para establecer por la vía legislativa que la presentación de una querella ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos tiene el efecto de interrumpir la prescripción de una causa de acción al amparo de la Ley Núm. 100 siempre que la notificación al patrono de copia de la querella sea hecha dentro del período prescriptivo. La enmienda dispuso además que el término prescriptivo quedaría en suspenso o congelado mientras la querella se continúe tramitando. El legislador expresamente señaló que *en todos los demás casos, el término prescriptivo se interrumpirá con la reclamación extrajudicial, con la presentación*

*de la acción judicial correspondiente o por el reconoci-*
*miento de la deuda por parte del patrono o de su agente*
*autorizado.* 29 L.P.R.A. sec. 150.

Todo lo anterior abona a la conclusión de que para inte-
rrumpir la prescripción de una causa de acción por discri-
men en el empleo al amparo de la Ley Núm. 100 por la vía
administrativa, el empleado agraviado deberá presentar
una querella ante la Unidad Antidiscrimen del Departa-
mento del Trabajo y Recursos Humanos o ante la E.E.O.C.,
agencias administrativas encargadas del procesamiento de
cargos por discrimen en el empleo a nivel estatal y federal.

Sin embargo, en el caso de autos, Sánchez pretende que
extendamos dicha norma a la oficina interna de la Autori-
dad encargada de investigar querellas por alegado discri-
men en el empleo. Señala que su causa de acción no está
prescrita toda vez que las querellas administrativas que
presentó en diciembre de 1988, mayo de 1989 y abril de
1990 contra Omar Santiago en la Oficina de Igualdad de
Oportunidades en el Empleo de la Autoridad tuvieron el
efecto de interrumpir el término prescriptivo de su causa
de acción. Para sustentar su alegación hace referencia a
una carta con fecha de 6 de agosto de 1990 enviada por la
directora de dicha oficina a la demandante. Señala que de
la carta se desprende su voluntad de obtener resarcimiento
por daños y perjuicios. En apoyo de su contención cita
parte del texto de la referida carta, suscrita por la direc-
tora de la mencionada oficina:

> Le indiqué además que [el proceso que se había seguido luego
> de la radicación de su última querella] culminaría con la for-
> mulación de cargos y en conformidad con el resarcimiento soli-
> citado por usted.

La recurrente nos indica que la mención de un "resarci-
miento" en la carta evidencia que existe igualdad de iden-
tidad entre la acción administrativa de la Autoridad y la
acción judicial, pues manifiesta su voluntad de obtener da-
ños y perjuicios. Argumenta que, por lo tanto, la acción

ante la Autoridad tuvo el efecto de interrumpir la prescripción de su causa de acción. No le asiste la razón.

Del expediente no surge que se hayan instado querellas ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos ni la E.E.O.C., agencias encargadas de tramitar los procedimientos administrativos por discrimen en el empleo a nivel estatal y federal. No podemos atribuirle a una investigación interna realizada por la Oficina de Igualdad de Oportunidades en el Empleo de la Autoridad el mismo carácter que a un procedimiento instado ante la Unidad Antidiscrimen del Departamento del Trabajo y Recursos Humanos o ante la E.E.O.C. Así lo reconoció la Asamblea Legislativa en 1991 al enmendar la Ley Núm. 100 para reconocerle únicamente a las acciones presentadas ante la Unidad Antidiscrimen del Departamento del Trabajo el efecto de interrumpir la prescripción por la vía administrativa en acciones al amparo de dicha ley.

Por lo tanto, la acción administrativa instada por la recurrente en la Oficina de Igualdad de Oportunidades en el Empleo de la Autoridad no tuvo el efecto de interrumpir el término prescriptivo de la causa de acción por daños y perjuicios al amparo del Art. 1802 del Código Civil, *supra*, y de la Ley Núm. 100.[4]

Por los fundamentos expuestos anteriormente, confirmaríamos la sentencia dictada por el tribunal de instancia que desestimó la demanda en el caso de epígrafe por prescripción. Como la sentencia mayoritaria deja sin efecto el dictamen recurrido, disentimos.

---

[4] Aun analizada la situación de la manera más flexible y favorable para la parte recurrente, al considerar que lo expresado por Sánchez en la reunión de 18 de julio de 1990 pudiese haber constituido una reclamación extrajudicial, su causa de acción estaría prescrita pues la demanda fue presentada el 22 de julio de 1991, más de un (1) año después de la alegada reclamación extrajudicial.