# 2008 DTA 67

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE SAN JUAN
PANEL I**

ESTEBAN RODRÍGUEZ MORALES
Recurrido

v.

ADMINISTRACIÓN REGLAMENTOS Y PERMISOS (ARPE)
Recurrente

Núm. KLRA-2007-01197

San Juan, Puerto Rico, a 30 de abril de 2008

Panel integrado por su Presidenta, la Juez Rodríguez de Oronoz,
y los Jueces Ramírez Nazario y Piñero González

Ramírez Nazario, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Comparece la Administración de Reglamentos y Permisos (ARPE) para solicitar la revocación de la Resolución emitida el 28 de agosto de 2007 y notificada el 2 de octubre de igual año por la Comisión Apelativa del Sistema de Administración de Recursos Humanos· del Servicio Público (CASARH). Mediante la referida Resolución, CASARH declaró ha lugar la apelación presentada por el señor Esteban Rodríguez y determinó que éste no había incurrido en conducta constitutiva de hostigamiento sexual, ni en violaciones a las normas de ARPE.

Considerados los escritos de las partes, la Transcripción de la Prueba Oral, así como los documentos que acompañan los escritos a la luz del derecho aplicable, resolvemos confirmar la Resolución recurrida.

### I

El señor Esteban Rodríguez (señor Rodríguez) laboraba como ingeniero en ARPE desde el 1 de septiembre de 2000. La señorita Brígida Franco (señorita Franco) también laboraba en ARPE para la fecha de los hechos. Ésta se desempeñaba como Técnico de Apoyo de Sistemas de Información del Centro de Servicios de San Juan desde enero de 2000. Es menester exponer algunos de los incidentes que dieron pie a la medida disciplinaria impuesta al señor Rodríguez, según se desprenden de la Transcripción de la Prueba Oral.

Surge de los autos que el 15 de diciembre de 2000, ARPE celebró una fiesta de Navidad en la oficina en la que el señor Rodríguez y la señorita Franco trabajaban. Durante la fiesta, el señor Rodríguez le propuso bailar a la señorita Franco. Ésta alegó que se había negado, pero luego se comprobó mediante una foto, que en efecto

éstos habían bailado. Finalizada la fiesta, el señor Rodríguez acompañó a la señorita Franco a su automóvil. Ésta no le solicitó que la acompañara, por lo que alegó que se sintió incómoda por ello. En el trayecto al auto, el señor Rodríguez le manifestó su interés en ella y la invitó al cine. La señorita Franco no aceptó la invitación, y le informó que sólo interesaba una relación de compañeros de trabajo con él. Adujo que al otro día de la fiesta, el señor Rodríguez entró a un cuarto de computadoras donde ella se encontraba y la volvió a invitar al cine. El señor Rodríguez negó este último incidente.

Según se desprende de los autos, en una ocasión, posterior a la mencionada fiesta, al ver a la señorita Franco en el área de la cocina de las oficinas, el señor Rodríguez le preguntó si estaba ˝solita˝ y le ofreció ayuda. La señorita Franco alegó que se sintió molesta, dejó su desayuno, y salió del área. De igual forma, sostuvo la señorita Franco que en otra ocasión, durante la hora de almuerzo, el señor Rodríguez la felicitó por haber obtenido su permanencia en la agencia, lo que la preocupó porque ella no le había informado a nadie sobre su permanencia. Infirió la señorita Franco, que el señor Rodríguez estaba obteniendo información de su persona. El señor Rodríguez, por su parte, alegó que sólo había presumido que le habían otorgado la permanencia a ella también, pues él había recibido la suya.

Así las cosas, el 30 de abril de 2001, el señor Rodríguez llamó a la extensión de la señorita Franco. Ésta le hizo señas a una compañera para que escuchara la conversación, y contestó la llamada utilizando el speaker. El señor Rodríguez señaló que la llamó porque quería aclarar las cosas y pedirle disculpas por cualquier malentendido. Ella le reiteró que no tenía interés en una relación con él, y le colgó.

Luego de ello, el 15 de mayo de 2001, la señorita Franco cursó una carta al Ingeniero Ayala, Director Interino, para expresar su incomodidad con los acercamientos del señor Rodríguez.

Surge de los autos que el sábado, 19 de mayo de 2001, el señor Rodríguez llamó al celular de la señorita Franco para felicitarla en su día de cumpleaños. Ésta se molestó por la llamada, ya que ella no le había provisto su número de teléfono celular.

El próximo 22 de mayo de 2001, el Ingeniero Ayala se reunió con el señor Rodríguez para informarle sobre la carta presentada por la señorita Franco, en la que expresó su preocupación por las acciones de éste. A raíz de tal reunión, el señor Rodríguez cesó sus acercamientos a la señorita Franco, y solicitó ser trasladado.

El 22 de octubre de 2001, el señor Rodríguez es notificado de que como consecuencia de la querella presentada por la señorita Franco, se le impondría una amonestación escrita a su expediente. En la misma se le indicó:

*"Su conducta puede ser constitutiva de hostigamiento sexual en el empleo en la modalidad de crear un ambiente hostil de trabajo para dicha empleada y además configura conducta tipificada como infracción a las Normas y Procedimientos Internos Sobre Jornada de Trabajo y Medidas Correctivas (1998):*

*-Interferir deliberadamente con otros empleados para impedir o limitar el trabajo de éstos. (Infracción Núm. 21)*

*-Insubordinación es negarse a acatar órdenes e instrucciones de su supervisor compatibles a la autoridad delegada de éstos. (Infracción Núm. 23)*

*-No cumplir con las normas establecidas mediante Ley, Reglamento, y Órdenes Administrativas que rigen en la Oficina. (Infracción Núm. 28)*

*-Conducta impropia dentro o fuera del trabajo de tal naturaleza que afecte el buen nombre, refleje descrédito o*

*ponga en dificultas a la Oficina o a cualquier agencia o dependencia del gobierno. (Infracción Núm. 35)"*

Así continuó la comunicación: *"Tomando en cuenta que usted no tiene historial disciplinario y que usted voluntariamente se trasladó a otro lugar de trabajo, además de que la agencia actuó con rapidez para evitar que la querellante se viera perjudicada, le estamos amonestando por escrito de tal forma que la presente medida disciplinaria será reflejada en su expediente de personal."* Posteriormente, mediante memorando de 28 de enero de 2002, la sanción fue enmendada a una reprimenda escrita para que se reflejara en su expediente de personal.

En desacuerdo, el 14 de noviembre de 2001, el señor Rodríguez presentó un escrito de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal (JASAP). Negó que incurriera en conducta de naturaleza sexual hacia la señorita Franco. Arguyó que su comportamiento para con ella siempre fue respetuoso. Señaló además ciertas inconsistencias y contradicciones en los hechos alegados en la querella presentada por ésta.

Tras varios trámites e intercambio de escritos, la vista administrativa, ahora ante CASARH, se celebró el 31 de enero de 2007. Durante la misma, testificaron la señorita Franco por parte de ARPE, y el señor Rodríguez, quien se representó por derecho propio y sirvió como su único testigo. El 30 de julio de 2007, la Oficial Examinadora que presidió la vista emitió su recomendación. Concluyó que según la prueba presentada y el derecho esbozado, el señor Rodríguez no había incurrido en conducta constitutiva de hostigamiento sexual hacia la señorita Franco. Determinó, además, que la conducta desplegada por éste tampoco configuraba infracción alguna a las Normas y Procedimientos Internos Sobre Jornada de Trabajo y Medidas Correctivas (1998). Así, declaró con lugar la apelación del señor Rodríguez.

El 2 de octubre de 2007, CASARH emitió Resolución en la que acogió la recomendación de la Oficial Examinadora. De esta forma, CASARH determinó que el señor Rodríguez no incurrió en hostigamiento sexual ni violaciones a las Normas y Procedimientos Internos Sobre Jornada de Trabajo y Medidas Correctivas (1998).

**II**

Inconforme, ARPE acude ante nos y señala como errores:

*"Erró la Honorable Comisión al irrazonablemente concluir que el recurrido no cometió las faltas imputadas, ignorando la evidencia que surge del expediente en claro abuso de su discreción.*

*Erró la Honorable Comisión al irrazonablemente concluir que el recurrido no creó un ambiente hostil contra la Srta. Brígida Franco, aun cuando éste admitió los acercamientos, invitaciones y comentarios por los cuales ésta se querelló."*

**III**

Es principio reiterado que las conclusiones e interpretaciones de los organismos administrativos merecen gran deferencia por parte de los tribunales. *Vélez Rodríguez v. ARPE*, 167 D.P.R. __, **2006 JTS 78**, Opinión de 21 de abril de 2006; *Otero Mercado v. Toyota de Puerto Rico*, 163 D.P.R. __, **2005 JTS 13**, a las páginas 684-685, Opinión de 3 de febrero de 2005; *Rivera Concepción v. A.R.P.E.*, 152 D.P.R. 116, 122-123 (2000); *Assoc. Ins. Agencies, Inc. v. Com. de Seguros*, 144 D.P.R. 425, 436 (1997). Debemos ser cautelosos al intervenir con las determinaciones administrativas, debido a que las agencias poseen la experiencia y los conocimientos altamente especializados que se encuentran dentro del ámbito de sus facultades y responsabilidades. *Rebollo Vda. de Liceaga v. Yiyi Motors*, 161 D.P.R. 69 (2004); *Pacheco Torres v. Estancias de Yauco*, 160 D.P.R. 409 (2003). Por tanto, se establece una presunción de legalidad y corrección a favor de las agencias administrativas. *A.R.P.E. v. Junta de Apelaciones Sobre Construcciones y Lotificaciones*, 124 D.P.R. 858, 864 (1989).

La deferencia judicial en la revisión de las determinaciones administrativas no conlleva la renuncia de los tribunales a su función revisora. Tan sólo implica que dicha función es de carácter limitado, la cual sólo se ejercerá en los casos apropiados. Tal intervención sólo estará justificada cuando la agencia obre de manera arbitraria, ilegal, en forma tan irrazonable que su actuación constituya un abuso de discreción, cuando la determinación no se sostenga mediante prueba sustancial, o cuando se haya cometido un error en la aplicación de la ley. *Fuertes v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993).

Cuando obre en el expediente administrativo evidencia sustancial que haya sido considerada en su totalidad, los tribunales apelativos debemos confirmar las determinaciones de hechos realizadas por la agencia. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 D.P.R. 70, 75 (2000); *Metropolitan S.E. v. A.R.P.E.,* 138 D.P.R. 200, 212-213 (1995). Nuestro Tribunal Supremo ha definido la evidencia sustancial como evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión, aunque exista prueba conflictiva de la cual puedan inferirse conclusiones distintas a las que la agencia adopta. *Adm. de Terrenos v. U. I.E.A.T.,* 149 D.P.R. 65, 75-76 (1999). De acuerdo con esta norma, la parte que impugna la determinación de la agencia tiene el peso de probar que dicha determinación fue arbitraria, irrazonable y que se tomó en ausencia de evidencia sustancial. *Otero Mercado v. Toyota de Puerto Rico, supra,* a la página 685.

En cuanto a las determinaciones de derecho de la agencia, el tribunal podrá revisarlas en todos sus aspectos, aunque observando un nivel de deferencia por el criterio de la agencia en aquella legislación que ésta implanta. *Torres v. J. Exam. Ing. Arq. y Agrim.,* 161 D.P.R. 696, (2004); *O.E.G. v. Rodríguez y otros,* 159 D.P.R. 98 (2003).

El Tribunal Supremo de Puerto Rico, reiteradamente ha resuelto que *"[l]os tribunales apelativos han de conceder una gran consideración y deferencia a las decisiones administrativas en vista de la experiencia y conocimiento especializado de las agencias". Empresas Toledo v. Junta,* 168 D.P.R.___ (2006), **2006 J.T.S. 147**. De igual forma, ha delimitado las áreas de la revisión judicial, señalando que generalmente se extienden a: (1) la concesión del remedio apropiado; (2) si la revisión de las determinaciones de hechos efectuadas por la agencia están sostenidas por el criterio de la evidencia sustancial; y (3) si las conclusiones de derecho fueron correctas. *Reyes Salcedo v. Policía de Puerto Rico,* 143 D.P.R. 85 (1997). Igualmente, ha interpretado que de acuerdo con la Sección 4.5, *supra,* la revisión judicial de una actuación o determinación administrativa debe limitarse a evaluar la razonabilidad de la decisión recurrida, la cual debe sostenerse a menos que se demuestre que es arbitraria o caprichosa. *Cruz Negrón v. Adm. de Corrección,* 169 D.P.R. ___ (2005), **2005 J.T.S. 39**; *Ramírez v. Depto. de Salud,* 147 D.P.R. 901 (1999).

Según lo anterior, la intervención del tribunal se limita a evaluar si la decisión de la agencia es razonable y no si hizo una determinación correcta de los hechos ante su consideración. *Asoc. Vec. H. San Jorge v. U. Med. Corp.,* 150 D.P.R. 70 (2000). En fin, el tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional para explicar la decisión administrativa. *Otero v. Toyota, supra.*

Por otro lado, la Ley Núm. 17 de 22 de abril de 1988, 29 L.P.R.A. sec. 155 *et. seq,* conocida como la Ley de Hostigamiento Sexual en el Empleo, establece una definición de hostigamiento sexual:

*"El hostigamiento sexual en el empleo consiste en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier conducta verbal o física de naturaleza sexual, cuando se da una o más de las siguientes circunstancias:*

*(a) Cuando al someterse a dicha conducta se convierte de forma implícita o explícita en un término o condición del empleo de una persona.*

*(b) Cuando el sometimiento o rechazo a dicha conducta por parte de la persona se convierte en*

*fundamento para la toma de decisiones en el empleo o respecto del empleo que afectan a esa persona.*

*(c) Cuando esa conducta tiene el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o cuando crea un ambiente de trabajo intimidante, hostil u ofensivo.”*

Se configura el ambiente hostil cuando el empleado demuestra que existe en su área de trabajo un ambiente abusivo como consecuencia de los actos de índole sexual. Ambiente se refiere a las condiciones o circunstancias de un lugar, favorables o no, para las personas que en él están. *Sánchez, et al v. A.E.E.,* 142 D.P.R. 880 (1997). El ambiente es algo continuo, creado por las condiciones o circunstancias de un lugar. Como consecuencia, el ambiente hostil perdura durante el tiempo que estén presentes las condiciones que los causan. *Id.* (Opinión Concurrente del Juez Asociado Negrón García).

La modalidad de hostigamiento sexual en un ambiente hostil puede ocurrir independientemente de que no exista menoscabo económico de la alegada víctima o de que la conducta no sea explícitamente sexual. *Sánchez, et al v. A.E.E., supra.* Basta que la conducta que se imputa como constitutiva de hostigamiento, se origine por razón del sexo de la persona y que la misma cree unas circunstancias en el empleo que alteren significativamente las condiciones de trabajo. *In re: Robles Sanabria,* 151 D.P.R. 483 (2000). El hostigamiento sexual puede expresarse en diversas formas: 1) manifestaciones simples como piropos, guiñadas e insinuaciones sexuales indeseadas; 2) expresiones de agresión sexual más directas y más violentas como frases de cariño no invitadas, pellizcos, roces corporales no solicitados, invitaciones insistentes a salidas que no se desean, besos, abrazos y apretones forzados; 3) casos extremos de violencia física y psíquica, que incluye la violación sexual. *Sánchez v. A.E.E., supra,* a la pág. 849.

El Art. 4 de la Ley Núm. 17, *supra,* dispone cómo se determinará qué conducta es constitutiva de hostigamiento sexual. Sobre el particular, nos señala el precepto, en lo pertinente:

*“Para determinar si la alegada conducta constituye hostigamiento sexual en el empleo, se considerará la totalidad de las circunstancias en que ocurrieron los hechos. La determinación de la legalidad de una acción, se hará basada en los hechos de cada caso en particular.”* 29 L.P.R.A. sec. 155c

Es preciso demostrar que la conducta crea una atmósfera hostil, intimidante u ofensiva, o que el ambiente laboral creado por las actuaciones hacia su persona interfieren de forma irrazonable con el sano desempeño de su trabajo. *Delgado Zayas v. Hosp. Interamericano,* 137 D.P.R. 643 (1994).

## IV

Al enfrentarnos a los errores señalados, los que discutiremos en conjunto, evaluamos detenidamente la Transcripción de la Prueba Oral y la prueba documental presentada. Esto responde a que a pesar de que, como hemos señalado, en nuestra jurisdicción la norma general es la de brindar gran deferencia a las determinaciones administrativas, la misma no precluye la revisión judicial, ni otorga grado alguno de inmunidad a la actividad administrativa. *Misión Ind. P.R. v J.P. y A.A.A.,* 142 D.P.R. 656 (1997).

Luego de ponderada la evidencia que obra en el expediente, concluimos que no le asiste la razón a ARPE. Ésta agencia no ha podido demostrar, con evidencia contenida en el expediente, justificación alguna que nos mueva a intervenir con la apreciación de los hechos realizada por la Oficial Examinadora de CASARH, ni con la determinación de CASARH de aceptar como correctas y adoptar como suyas las conclusiones de derecho de su Oficial Examinadora. Como hemos expuesto, las determinaciones de los organismos administrativos merecen gran deferencia judicial siempre que estén sostenidas por evidencia sustancial que surja del expediente considerado en su totalidad. Véase, 3 L.P.R.A. sec. 2175; *López v. Administración* 168 D.P.R. ___ (2006), **2006 J.T.S. 146**. Los tribunales podrán sustituir el criterio de la agencia por el propio, sólo cuando no puedan hallar una base racional para explicar la decisión administrativa. *Otero v. Toyota, supra.* En el caso que nos

ocupa, resolvemos que la decisión administrativa de CASARH se fundamenta en bases racionales. Veamos.

Es la contención de ARPE que el señor Rodríguez creó un ambiente hostil en el empleo, para la señorita Franco, con sus acercamiento e invitaciones para revelarle su interés por ella. Arguye que esta conducta constituye tal modalidad de hostigamiento sexual, así como que infringe normas de conducta de la agencia, por lo que procedió a sancionarlo mediante una reprimenda escrita consignada en su expediente.

Por su parte, el señor Rodríguez se reitera en que su comportamiento no puede ser caracterizado como hostigamiento sexual, toda vez que para probar un caso de esta índole en su modalidad de ambiente hostil debe establecerse que la conducta se basa en un acercamiento sexual de naturaleza verbal o física, el cual no se dio en este caso. Asimismo, esboza que sus actuaciones no infringieron las normas de ARPE, ni ameritaban la sanción impuesta. Esgrime que sólo le manifestó de forma respetuosa a la señorita Franco su interés en entablar una relación con ella, por lo que la invitó al cine. Sostiene que al ser rechazado, cesó sus acercamientos.

Según la normativa expuesta, para que se configure el hostigamiento sexual deben concurrir varios criterios. Por un lado, la persona a quien se le imputa, debe incurrir en cualquier tipo de acercamiento sexual no deseado, requerimientos de favores sexuales y cualquier conducta verbal o física de naturaleza sexual. Esta conducta a su vez tiene que tener el efecto o propósito de interferir de manera irrazonable con el desempeño del trabajo de esa persona o crear un ambiente de trabajo intimidante, hostil u ofensivo.

En el caso ante nuestra consideración, surge de la prueba presentada ante la Oficial Examinadora de CASARH, que el señor Rodríguez nunca realizó actos o manifestaciones que implicaran connotaciones de índole sexual. Por tanto, no se cumple con este criterio. Sin embargo, se ha establecido que el hostigamiento sexual se puede configurar con manifestaciones simples, como piropos, si eétos tienen el efecto o el propósito de crear un ambiente hostil de trabajo. En este caso, ARPE no ha logrado conducirnos a prueba en el expediente que establezca que las actuaciones del señor Rodríguez le crearan a la señorita Franco unas circunstancias en el empleo que alterasen significativamente las condiciones de trabajo. *In re: Robles Sanabria, supra.* Era preciso que la agencia demostrara con evidencia sustancial que la conducta del señor Rodríguez creó una atmósfera hostil, intimidante u ofensiva, o que el ambiente laboral creado por las actuaciones hacia la señorita Franco interfirió de forma irrazonable con el sano desempeño de su trabajo. *Delgado Zayas v. Hosp. Interamericano, supra.*

Una cuidadosa lectura de la Transcripción de la Prueba Oral, así como de las cartas suscritas por la señorita Franco, nos lleva forzosamente a concluir que ni la conducta del señor Rodríguez se puede catalogar como hostigamiento sexual, ni que la señorita Franco se hallara en una atmósfera hostil, intimidante u ofensiva en su ambiente de trabajo. Más bien, se trata este caso de una persona soltera que se interesó en otra persona soltera, y le expresó su interés sana y respetuosamente. Así surge de la prueba que fue creída por la Oficial Examinadora de CASARH. Por tal razón, es menester concluir que la prueba presentada ante ésta, no demostró que la conducta del señor Rodríguez hacia la señorita Franco configurara hostigamiento sexual en su modalidad de ambiente hostil. De un análisis del expediente ante nuestra consideración, no se desprende que la conducta del señor Rodríguez hacia la señorita Franco afectó el buen funcionamiento de la agencia o que tuvo ulteriores consecuencias en el desempeño de alguna de las partes envueltas, en particular el de la señorita Franco.

Por otro lado, ARPE también le imputó al señor Rodríguez la infracción de varias normas disciplinarias de la agencia, a saber de las Normas y Procedimientos Internos Sobre Jornada de Trabajo y Medidas Correctivas (1998). Como primera infracción, le imputó interferir deliberadamente con otros empleados para impedir o limitar el trabajo de éstos. (Infracción Núm. 21) Debemos destacar que los acercamientos del señor Rodríguez fueron en su mayoría fuera de horas laborables, por lo que no tuvieron el efecto de impedir o limitar el trabajo de la señorita Franco. Así, vemos que la invitación a bailar y al cine ocurrieron durante una fiesta de Navidad. (Transcripción de la Prueba Oral, pág. 6) La felicitación por la permanencia en el empleo concedida a la

señorita Franco se dio durante la hora de almuerzo. (Transcripción de la Prueba Oral, pág. 10). El ofrecimiento de ayuda en la cocina fue durante el desayuno, antes de comenzar a laborar, y finalmente la llamada el día de su cumpleaños ocurrió un sábado. (Transcripción de la Prueba Oral, págs. 13 y 16). La señorita Franco no demostró con su testimonio cómo las expresiones del señor Rodríguez le impidieron realizar sus labores. Ésta se limitó a alegar que se sentía incómoda y le restaba motivación para acudir al trabajo, lo cual no fue creído por la Oficial Examinadora de CASARH. (Vea Informe de la Oficial Examinadora de CASARH, pág. 5, Apéndice de ARPE, pág. 8). Por tanto, es propio concluir que la prueba presentada no estableció que lo ocurrido interfirió con el trabajo de la señorita Franco.

ARPE sostiene además que el señor Rodríguez mostró insubordinación al negarse a acatar órdenes e instrucciones de su supervisor compatibles a la autoridad delegada de éstos. (Infracción Núm. 23). Sin embargo, surge de la prueba que el señor Rodríguez fue advertido de la querella presentada en su contra por la señorita Franco, el 22 de mayo de 2001. En esa fecha se reunió con el Ingeniero Ayala, aclaró las cosas, y solicitó su traslado voluntariamente. (Transcripción de la Prueba Oral, págs. 44-45). No existe en autos, prueba de que posterior a esa fecha en que fue apercibido de la querella, el señor Rodríguez realizara algún acercamiento a la señorita Franco. La señorita Franco no declaró sobre incidentes posteriores. (Transcripción de la Prueba Oral, pág. 17). El señor Rodríguez así afirmó que una vez advertido, cesó toda comunicación con la señorita Franco. (Transcripción de la Prueba Oral, pág. 46). Por tanto, no se probó que éste no se subordinara a las órdenes de su supervisor.

En cuanto a las imputaciones de no cumplir con las normas establecidas mediante Ley, Reglamento, y Órdenes Administrativas que rigen en la Oficina (Infracción Núm. 28); y de desplegar conducta impropia dentro o fuera del trabajo de tal naturaleza que afecte el buen nombre, refleje descrédito o ponga en dificultas a la Oficina o a cualquier agencia o dependencia del gobierno (Infracción Núm. 35), éstas no se sostienen con la prueba desfilada ante CASARH. No hay en autos, prueba alguna que sostenga la configuración de tales infracciones. El récord no presenta situaciones o consecuencias lesivas a intereses vitales de la agencia o de terceras personas que justifiquen afectar el expediente de un profesional sin historial disciplinario previo.

En fin, los incidentes probados no constituyen hostigamiento sexual en ninguna de sus modalidades, ni infracción reglamentaria alguna. Examinada la Resolución recurrida, no encontramos razón por la cual debamos intervenir con la misma. CASARH no actuó de manera arbitraria, caprichosa o irrazonablemente al emitir su determinación. Su determinación se sostiene con evidencia sustancial habida en el expediente.

## V

Por los fundamentos expuestos, se confirma la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal.

Lcda. María Elena Pérez Ortiz
Secretaria del Tribunal de Apelaciones